## RUSSELL *v.* POST.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 126. Argued January 5, 1891.—Decided March 2, 1891.

When, in the trial of a civil action charging a conspiracy to defraud, it appears in evidence that a loan, charged to have been an instrument in the conspiracy, was not an ordinary business transaction; that the compensation paid for it to the lender was so excessive as to be suspicious; that the purpose on the part of the borrower in taking the loan was the accomplishment of an act criminal in itself and made criminal by statute; and when the surrounding circumstances proved in the case tend to charge the lender with knowledge of the wrongful purpose of the borrower, the case should not be withdrawn from the jury, but it should be submitted in order that they may determine whether the loan was made with intent to consummate the wrong, and whether the lender knowingly assisted in accomplishing it.

AT LAW. The case is stated in the opinion.

*Mr. Talcott H. Russell* and *Mr. Simeon E. Baldwin* for plaintiff in error.

*Mr. William G. Choate* and *Mr. L. Laflin Kellogg* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

The plaintiff here, plaintiff below, is the receiver of the American National Life and Trust Company of New Haven. This action, originally commenced in the Supreme Court of the city and county of New York, and thence removed to the Circuit Court for the Southern District of New York, is one to recover damages resulting from certain alleged fraudulent acts by the defendant Post, who alone answered, in conjunction with other parties, by which a large quantity of valuable assets were abstracted from the possession of the American National Life and Trust Company and wholly lost to it.

The company was an insurance company, organized under

the laws of the State of Connecticut. Proceedings were duly instituted for winding up its affairs and annulling its charter, and under these proceedings the plaintiff was appointed receiver and authorized to maintain this action. This appointment was made on November 8, 1878. Some time before his appointment a large bulk of the assets of the corporation were transferred to the National Capital Insurance Company of Washington, D. C., and wholly lost to the Connecticut corporation, as well as to the parties, having policies in such company.

The contention of plaintiff is, that this transfer and loss of assets of the Connecticut corporation was brought about by a conspiracy, and through the fraudulent acts of defendant Post, with others. The case was tried before a jury; and at the close of the testimony the judge, ruling that the plaintiff had made out no case, and proved nothing which justified any submission of matters of fact to the jury, directed a verdict for the defendant. The record, therefore, transmitted here by proper proceedings in error, presents the question, not whether the plaintiff was entitled to recover all the damages he claimed, not what was the measure of damages, if he was entitled to recover, not even whether upon the facts the jury was bound to return a verdict in his favor, but whether there was sufficient testimony to require a submission of the questions to the determination of a jury. We are of the opinion that there was such sufficient evidence, and that, therefore, the judgment must be reversed, and the case remanded for a new trial.

We premise what we have to say with the remark that we express no opinion as to the extent of the recovery which should be had, if any, or the measure of damages, nor do we wish to be understood as asserting that the verdict ought to have been in favor of the plaintiff. We simply hold, for reasons hereafter stated, that there was presented by the testimony matters of fact vital to the controversy, upon which the plaintiff had a right to the opinion of the jury, and which it was error for the court to withdraw from its judgment. It is necessary for the just disposition of this case that a fuller statement of the disputed and undisputed facts should be made.

In the fall of 1875, Benjamin Noyes, of New Haven, and Henry D. Walker, of Boston, were officers of the Connecticut company, which was then in failing circumstances, though possessed of assets amounting to several hundred thousand dollars. Personal liability was supposed to attach to these gentlemen, but whether this was so or not in fact, is immaterial. The condition of the company was known to defendant Post; at least, he was fully advised of suspicion and charges, because, on an inquiry instituted by the insurance commissioner of the State of Connecticut, he had been called as a witness as to the value of certain securities held by it. On or about December 5, 1875, Noyes and Walker, with others, bought the franchises of the National Capital Insurance Company of Washington, D. C., a company without property or business, and paid four thousand dollars for the purchase. Conspiring to secure themselves from liability, and to wreck for their own benefit the Connecticut company, a scheme was devised for the reinsurance of the risks of the Connecticut company with the National Insurance Company. A reinsurance was possible only on satisfactory representations to the Connecticut company of the possession by the Washington company of abundant assets. Such satisfactory evidence was furnished to the directors of the Connecticut company, the reinsurance was accomplished, and a large amount of the assets of the Connecticut company was transferred to the Washington company. The outcome of this was that the Connecticut company lost its assets, and, somehow or other, the same assets transferred to the Washington company disappeared. At least, for the purposes of this case, these facts must be considered as proved, in view of the allegations in the complaint, and the time at which the court interposed in the trial and directed a verdict for defendant. The contention of plaintiff is, that such transfer of assets was brought about by fraudulent representations made to the Connecticut company by the Washington company, and that the representations were accomplished through the agency of the defendant Post, and under such circumstances that knowledge of a fraudulent intention is imputed to him. Walker and Noyes were officers of the

Connecticut company; Walker became treasurer of the Washington company. It was necessary to satisfy the Connecticut company that the Washington company should be possessed of large properties. It in fact had nothing. The possession of properties by the Washington company must, therefore, be evidenced to the Connecticut company, before reinsurance was possible. With other transactions having the same objects in view, Walker arranged with defendant Post that he should put fifty thousand dollars in bonds into his, Walker's, possession as treasurer of the new company. Thereupon, fifty thousand four hundred dollars of negotiable securities were placed in the Continental National Bank by Post, and a receipt given to Walker, by the assistant cashier of that bank, in these words: "Received of Henry D. Walker, the following securities as special deposit, without risk in case of robbery." Following these words was a list of the securities, and the receipt was signed "W. J. Harris, Ass't Cashier." When this and other like deposits had been accomplished, the Connecticut company was advised that the Washington company was possessed of one hundred and fifty thousand dollars of property, and sought a reinsurance of the risks of the Connecticut company. One of the directors of the Connecticut company, Joseph A. Smith, was appointed a committee to ascertain the character and value of the assets of the Washington company. In obedience to that duty, he went to New York and was shown by Walker, the treasurer of the Washington company, the securities thus deposited in his name in the Continental Bank, as well as others similarly deposited, and reported to the Connecticut company that the treasurer of the Washington company had in his possession, as assets of the latter company, more than one hundred and fifty thousand dollars of municipal and other securities. Thereupon, the reinsurance was effected, and the assets of the Connecticut company, in the main, were transferred to the Washington company.

It is undisputed that the Washington company had no assets, and that this show of assets was made by reason of the transfer of apparent title by the defendant Post and others to Walker, the treasurer of the Washington company. It is in

evidence that Post received from one thousand to fifteen hundred dollars, the exact amount not being clearly shown, for this temporary transfer of apparent title. The transfer, as arranged between Walker and Post, was only for fifteen days, so that for perhaps fifteen hundred dollars Post permitted Walker to appear as the owner of fifty thousand dollars of municipal securities for half a month. According to Post's own testimony, he arranged with the Continental Bank, which was the bank with which he did business, that these securities were not to be passed from its possession, and that all that Walker could do was to show them as deposited in his name. The face value of the securities was fifty thousand four hundred dollars — their real value was perhaps not over thirty thousand dollars. No transfer of their actual possession was provided for; no right given to remove them from the bank; Post considered himself all the while the owner and in possession, having given simply permission to make a show of title, a permission to close at the end of fifteen days. Surely such a transaction is outside the ordinary lines of business. It must have carried notice to Post of some scheme, and of a design to accomplish something which ordinary business transactions would not justify.

Outside of these matters, in respect to which there is no dispute, are others in which the testimony is contradictory. A. G. Fay, who was attorney of the Washington company, testifies that he called with Walker twice on Post, and in one of those interviews Post asked him "if he was going to be connected with the company;" and he replied, "that he didn't know anything about it;" that "there was not any company as yet." The testimony of the president of the Continental Bank and Post is conflicting as to what was said with respect to the deposit of the bonds. The president also testified that after the commencement of this suit Post said to him, "the less we remember about that, it is an old thing, we had better let it go — it is one of those old things that it is best to be forgotten, or something like that." There are also other circumstances, perhaps in themselves of a trifling nature, and yet are such as a jury would be apt to consider and justly too, to

indicate knowledge on the part of defendant.   The main point is that which we have referred to, a scheme on the part of Walker and others to transfer from the Connecticut company to the Washington company, the latter company being wholly without property, the assets of the former; that to accomplish such a transfer a show of assets in the Washington company was essential; that such show of assets was accomplished through the means of Post, and through a transaction which, to say the least, was not an ordinary business transaction — a transaction which secured enormous pecuniary gain to Post for a temporary and well-guarded placing of the apparent title of securities in the name of Walker.   We do not question the proposition that a man may loan money or bonds and not be responsible for the improper use of the money or securities by the parties to whom the loan is made; and we do not mean to say that Post is necessarily responsible for any improper use made by Walker of the securities, the title to which he apparently parted with; but we do hold that, where the loan is not an ordinary business transaction; where the compensation paid for the loan is excessive, so excessive as to be suspicious; where the purpose on the part of the borrower is the accomplishment of an act not merely *malum prohibitum* but *malum in se*, an act criminal by statute and criminal in itself; and where there are surrounding circumstances, trivial, it may be, separately considered, and the testimony in respect thereto contradictory, but the tendency of which is to charge the lender with knowledge of the wrongful purpose of the borrower, although there may be no direct and positive evidence of guilty knowledge; a jury may be justified in holding that the loan was made with intent to consummate the wrong, and that the lender must share in the responsibility for the result of the wrong contemplated and accomplished, and which, knowingly, he assisted in accomplishing.

We think, therefore, there was error in withdrawing the case from the jury; and that there was testimony justly demanding its consideration, as to whether the defendant Post was not knowingly aiding a fraudulent transaction.   Even if he did not know the full nature and terms of the conspiracy,

but only knew in a general way that a scheme existed by which the funds of the Connecticut company were to be withdrawn wrongfully from its control, and lent his aid, for large consideration, to the accomplishing of such fraudulent transaction, we do not think he can avoid his liability by proof that the exact nature and full details of the scheme were not communicated to him.

*The judgment will be reversed and the case remanded for a new trial.*

MR. JUSTICE BRADLEY dissents.