WRIGHT *v.* SUPREME COMMANDERY OF THE GOLDEN RULE.

The terms of the certificate of membership binding the assured to pay such assessment as should be levied and required by the Supreme Commandery, and the declaration alleging that the assessment not paid was one of which the assured had no notice whatever, and also that under the charter and by-laws of the association thirty days after the assessment is due were allowed holders of certificates and beneficiaries thereof to pay such assessment, that the assured died within the thirty days, and that before the thirty days had expired the beneficiaries tendered the unpaid assessment and the association refused to receive it, there was enough in the declaration to show *prima facie* that no forfeiture of the policy resulted from the non-payment of the assessment, more especially as the declaration also alleged that the association continued to treat the assured as a member in good standing by making a subsequent assessment against him.

July 8, 1891. By two Justices.

Insurance. Forfeiture. Before Judge MILLER. Bibb superior court. November term, 1890.

Reported in the decision.

LANIER & ANDERSON, for plaintiff.

A. A. DOZIER and G. C. CHANDLER, for defendant.

BLECKLEY, Chief Justice.

A useful collection of authorities on the general subject-matter may be seen in 33 Cent. Law Jour. 42, 65, 87.

The contract of insurance declared upon stipulated for the payment " of all assessments levied and required by the Supreme Commandery," and provided that, " any violation of the above mentioned conditions, or of the requirements of the laws now in force or hereafter enacted governing the order or this class, shall render this certificate and all claims under it or upon the order null and void." The certificate says nothing of giving notice of assessments, and nothing with regard to the time at or within which assessments had to be paid. They were to be paid " as levied and required by the Supreme Commandery." The declaration as it stood at first alleged that Wright, the assured, had no notice whatever, up to the time of his death, of the making of the unpaid assessment or that any assessment against him remained unpaid. In the case of ordinary life policies, the successive premiums or instalments of premium are uniform in amount and mature at fixed times. No occasion for notice therefore exists, unless it shall be created by custom or course of dealing between the parties. But a different rule prevails touching contingent and irregular assessments made by mutual aid associations upon their members. Unless notice is dispensed with by the contract, no liability to pay an assessment becomes fixed until notice has been given. Bacon on Benefit Societies, §379. If any special law applicable to the given association, or any by-law, dis-

penses with notice, this is matter of defence, unless it is disclosed in the pleadings of the plaintiff. Here no such disclosure is made. By an amendment to the declaration it was alleged that within less than thirty days after the unpaid assessment was due, the full amount of it was tendered to the defendant, but was refused, " although, under the charter and by-laws of the said defendant, thirty days after an assessment was due were allowed holders of insurance certificates and the beneficiaries thereof . . in which to pay an assessment past due, and such payment relieves from any default or suspension caused by failure to pay an assessment when due." The demurrer to the declaration as amended admits this allegation to be true. It will be noticed that it is alleged that the by-laws allow the beneficiaries to make payment within thirty days after an assessment becomes due. We think this implies, if nothing to the contrary appears in the by-laws, that the beneficiaries can make this payment though the assured be dead. In this instance he was dead, but his death occurred within the thirty days and therefore before the time allowed by the by-laws for payment of the assessment had expired. Perhaps the declaration is also somewhat aided by another allegation in the amendment, to the effect that the association continued to treat the assured as a member in good standing by making a subsequent assessment against him. Niblack on Mut. Ben. Soc. §345. At all events, taking the declaration as it stood after amendment, it set forth a cause of action sufficiently to put the defendant on pleading anything contained in its by-laws or any extrinsic facts tending to negative its liability. We do not at present see what the promise of Adams, the agent, had to do with the merits of the case. But this, though a seeming irrelevancy, would not vitiate the declaration.

The court erred in sustaining the demurrer and in dismissing the action.    *Judgment reversed.*