FARMERS UNION INSURANCE COMPANY, MUTUAL, V. STEPHEN WILDER.

[FILED NOVEMBER 2, 1892.]

1. **Mutual Fire Insurance:** PREMIUM NOTES: ASSESSMENTS: JUDGMENT: EXECUTIONS. Where premium notes have been given to a mutual insurance company, assessments to be made thereon from time to time as losses occur, in case an assessment is not paid in thirty days after personal demand therefor or by letter, the company may recover for the whole amount of the deposit note with costs, and executions will thereafter be issued on such judgment as assessments for losses may require.

2. ———: ASSESSMENTS: DEFAULT IN PAYMENT: FORFEITURE: WAIVER. Where there is a default in paying assessments and the company does not declare the policy forfeited, but continues to make further assessments as losses occur, it will be a waiver of the cause of forfeiture.

ERROR to the district court for Adams county. Tried below before GASLIN, J.

*Thompson Bros.,* and *Capps, McCreary & Stevens,* for plaintiff in error.

*Hewett & Olmstead, contra.*

MAXWELL, CH. J.

This action was brought by defendant in error against the plaintiff in error to recover for the loss of a barn, etc. It is alleged in the petition:

"That at the time hereinafter mentioned the defendant was, and still is, a corporation duly organized under the laws of the state of Nebraska, with lawful authority to make contracts of insurance against fire.

"Second—On the 29th day of December, 1888, the plaintiff was the owner of a barn and granary situated on section 2, township 5, range 10 west, in Adams county, state of Nebraska, and a large amount of oats, to-wit, 2,000 bushels, in said granary, said barn and granary being adjoining each other, and together of the value of $550, and the said corn in said granary being of the value of $200.

"Third—On the 10th day of January, 1889, the defendant, in consideration of $16 to it paid on the said 29th day of December, 1888, as a membership fee, and a further consideration of a premium contract for the sum of $48, to be paid in assessments as specified, made, and delivered to the plaintiff a policy of insurance on said barn, granary, and grain therein, for the period of five years, from January 24, 1889, in which policy the insurance on said barn is

stated at $500, and the oats as grain at $200, but the in-surance of the granary to the amount of $50, by mistake of the said defendant, was omitted in said policy."

Then follows a statement of the loss, etc., and facts showing the liability of the company.

The defendant below in its answer admitted the policy, but alleged that it contained the following provision: "If any assessment be not paid within thirty days after date of same, this certificate shall thereupon lapse and cease to be in force, and if remittance be received after date of such lapse no indemnity will be paid for any loss happening be-tween the date of such expiration and receipt of such re-mittance; but the amount so received shall be placed to the credit of the member and he shall be reinstated and this certificate renewed;" that the said Wilder had failed and neglected to pay the following assessments, to-wit: March, 1889, $1.28; June, 1889, $1.60; September, 1889, $1.60; and for that reason the said policy of insurance had lapsed and was null and void at the time and previous to the pre-tended loss by fire, and was not binding upon the said company at the time of the said loss, or at any time since the first assessment became due and owing. Also denies that it was indebted to the said plaintiff in the sum claimed or any other amount.

The plaintiff, for reply, admits the assessments and the amounts thereof, and the non-payments thereof, but said the same had been waived by the defendant company. The case was tried to the court, judgment for plaintiff, to re-verse which this action is presented to this court.

On the trial of the cause the court stated the reasons for the judgment in its findings, viz.: "This cause came on for trial before the court upon the pleadings and evidence and was submitted on consideration. The court finds said policy should not be reformed; the court further finds that plaintiff, on December 29, 1888, made the application in writing, introduced in evidence, to defendant for insur-

ance of his granary, barn, and grain therein, described in petition, among other property in said application described, giving therefor his note for $16, and premium contract for $48, and that on January 10, 1889, defendant issued to plaintiff the .policy introduced in evidence, insuring said granary and stable at $500, and grain therein for $200, for five years from January 24, 1889; that said property was totally destroyed by fire, without any fault *or neglect of plaintiff, November 11, 1889, and that said property so destroyed was of the value of $700 and covered by said policy at time of said loss; that plaintiff duly notified defendant of said loss and that no part of said loss has been paid; that three assessments were made on said premium contract of $48, to wit, March, June, and ·September, 1889, respectively, and no part thereof was paid by plaintiff, and all were due at time of said loss; that after said loss plaintiff offered to pay the same, which defendant declined and refused to receive; that said policy provides that thirty days after date of notice of any assessment it shall lapse and cease to be in force; that last part of said application and contract of insurance provides as follows: 'This contract may be canceled at the request of the assured by paying all assessments up to date of' such request, together with $2 extra as a cancellation fee, and the surrender of membership certificate to the company. This company reserves the right to cancel this contract by giving notice of same and returning premium contract or pledge to member.'

"Court also finds that defendant never returned or offered to return to plaintiff his $16 note and premium contract of $48, or either of them, nor did said defendant cancel said policy or notify said plaintiff of any intention to do so.    Court further finds defendant is entitled to a credit of $——, principal and interest on the three assessments unpaid by plaintiff.

"From last clause in sec. 3, secs. 17, 18, and 42, ch.

43, Statutes Nebraska; vol. 11, Encyclopædia of Law, p. 342; No. 7, p. 336, No. 2 and p. 308, No. 5, and in particular cases cited in said numbers or sections, 26 Ia., 10; 59 N. Y., 521; 34 N. W. Rep., 151; 18 Id., 749; 39 Wis., 120, last part of the case, 16 Neb., and cases cited on p. 406; 15 Id., 494; 18 Id., 501, the court do find in law the defendant's continuation to make assessments against plaintiff and notice to pay same, thereby recognized said policy and waived the forfeiture of the same, even if it lapsed by failure to pay said assessments, and continued it in force.

"The court further finds their retention of plaintiff's $16 note and $48 premium contract and making three assessments thereon, and notice to pay same, in law waived any lapse of said policy, and that their failure to return to plaintiff his said note and contract and cancel said policy, and notify plaintiff of the same, renders the defendant liable in this case.

"It is therefore ordered by the court that said policy be not reformed but remain in full force as issued, and it is also considered and adjudged that the said plaintiff have and recover of and from said defendant $695, and his costs herein expended, taxed at $———."

Section 17 of chap. 43, Comp. Stats. of 1887, is as follows: "All notes deposited with any mutual insurance company, at the time of its organization, as provided for in section 3 hereof, shall remain as security for all losses and claims, until the accumulation of the profits invested as required by the sixth section of this act shall equal the amount of cash capital required to be possessed by stock companies organized under this act, the liability of each note decreasing proportionately as the profits are accumulated; but any note which may have been deposited with any mutual insurance company subsequent to its organization, in addition to the cash premiums, or any insurance effected with such company may, at the expiration of the

time of such insurance, or upon the cancellation by the company of the policy, be relinquished and given up to the maker thereof, or his legal representatives, upon his paying his proportion of losses and expenses which may have accrued thereon during such term. The directors or trustees of any such company shall have the right to determine the amount of the note to be given, in addition to the cash premiums, by any person insured in such company, and every person effecting insurance in any mutual company, and also their heirs, executors, administrators, and assigns continuing to be so insured, shall thereby become members of said company during the period of insurance, and shall be bound to pay for losses and such necessary expense as aforesaid accruing to said company, in proportion to the amount of his or their deposit note or notes; *Provided,* That any person insured in any mutual company, except in the case of notes required by this act to be deposited at the time of its organization, may at any time return the policy of cancellation, and upon payment of the amount due at such time upon his premium note, shall be discharged from further liability thereon."

"Sec. 18. The directors shall, as often as they deem necessary, after receiving notice of any loss or damage, settle and determine the sums to be paid by the several members thereof, as their respective portions of such loss, and publish the same in such manner as they shall deem proper, or the by-laws shall have prescribed ; but the sum to be paid by each member shall always be in proportion to the original amount of his deposit note or notes, and shall be paid to the officers of the company within thirty days after the publication of said notice; and if any member shall, for the space of thirty days after personal demand, or by letter, for payment shall have been made, neglect, or refuse to pay the sum assessed upon him as his proportion of any loss aforesaid, the directors may sue for and recover the whole amount of his deposit note or notes, with costs

40

of suit ; but execution shall issue for assessments and costs as they accrue only, and every such execution shall be ac-accompanied by a list of losses for which the assessment was made ; if the whole amount of deposit notes shall be insufficient to pay the loss occasioned, the sufferers insured by the said' company shall receive, toward making good 'their respective losses, a proportionate share of the whole amount of said notes, according to the sums to them respectively insured, but no member shall ever be required to pay for any loss more than the whole amount of his deposit note or notes."

Section 3 requires the certificate of a justice of the peace, notary public, or clerk of the district court to accompany each note received from a person insured, certifying that in the opinion of such officer the person making the same is pecuniarily good and responsible for the same in property not exempt from execution by the laws of the state, etc.

By section 18, where an assessment has been made and is not paid to the officers of the company within thirty days after the publication of notice, and after thirty days from personal demand or by letter, neglect, or refuse to pay his assessment, the company may sue for and recover the whole amount of his deposit note with costs of suit, and executions shall thereupon be issued on said judgment from time to time as assessments are made for losses. That is the mode provided by law for collecting delinquent assessments and should have been followed in this instance. In addition to this no forfeiture was declared and the company treated the contract as continuing. Upon the whole case the judgment is supported by the clear weight of evidence and is

AFFIRMED.

THE other judges concur.