ANNA KING, Respondent, *v.* MASONIC LIFE ASSOCIATION OF WESTERN NEW YORK, Appellant.

*Assessment life insurance — proof of service of notice of assessment — waiver — admissions of an attorney upon a trial.*

Where a person is a certificate holder in an assessment insurance company, the by-laws of which require payment of an assessment within twenty days after notice thereof, it is incumbent upon the company, if it refuses payment of the certificate, to show affirmatively that the notice was sent; it is not enough that the usual course of business required such sending nor that the books of the company indicate that the notice was sent; it is, however, the duty of the jury to consider such evidence, but it is not conclusive.

87 591
4ap541
87 591
41ap134
41ap136
87h 591
53ad649

87h 591
73 A.D 307

Where an assessment insurance company received assessments from a member after the same were due and by a course of such dealing established in the mind of the member a belief that it would continue to receive his assessments in this manner, his claim will not be cut off absolutely by the fact that he is in arrears, under a strict construction of the by-laws, at the time of his death.

The question of waiver in such a case is one for the jury.

While the admissions of an attorney, made in open court upon a question germane to the issue, are binding upon his client, the client's responsibility cannot be extended beyond the fair import and meaning of the admissions.

APPEAL by the defendant, the Masonic Life Association of Western New York, from a judgment of the Supreme Court in favor the plaintiff, entered in the office of the clerk of the county of Erie on the 7th day of November, 1894, upon the verdict of a jury rendered after a trial at the Erie Circuit.

*Daniel H. McMillan*, for the appellant.

*George W. Wheeler*, for the respondent.

WERNER, J.:

The defendant, a mutual, fraternal, assessment insurance association, issued to the plaintiff's husband, Job King, on the 14th day of April, 1890, two certificates of insurance for $2,000 and $3,000 respectively, designated as being in classes " B " and " C " respectively.   Job King died June 2, 1891, leaving the plaintiff, his widow, as the beneficiary named in said certificates.   At the time of King's death there were sufficient funds in the treasury to pay the full amount of $2,000 upon certificate No. 1 in class " B," and as to certificate No. 2 in class " C " the membership was sufficiently large to pay $1,813.24.   It was, therefore, conceded by the defendant that if the plaintiff was entitled to recover at all it would be for the sum of $4,232.68, which included interest to the date of the trial.

Those becoming members of the defendant association were required by article 10 of its by-laws to pay a membership fee and an advance assessment, and thereafter to pay assessments as made by the board of directors, in accordance with the table of rates set forth in said article 10.

By article 13 of said by-laws it was made the duty of members to pay each such assessment within twenty days after receiving the notification thereof from the secretary, who was required to send

Hun.] FIFTH DEPARTMENT, JUNE TERM, 1895.

the same to the members of the class or classes in which the assessment was made.

Section 2 of said article 13 provides for the form of notice and the manner of sending the same. It was the custom of the defendant to send its notices by mail to the members, whose names were taken from the books.

Under section 6, article 7 of the by-laws, the board of directors adopted a resolution requiring health certificates to be signed by delinquent members who desired to be reinstated and delegated to the secretary of the defendant the power to demand in such cases either such certificate or a re-examination.

It is claimed for the defendant that a notice of assessment was sent to Job King on the 1st day of March, 1891, which was not attempted to be paid until the succeeding twenty-fifth of May, when the plaintiff mailed to the defendant a check for fifteen dollars. Defendant's secretary immediately wrote to King, inclosing a health certificate, and stated in his letter that "your remittance is held subject to the return of this certificate signed." This health certificate was not signed or returned, and on June third, after learning of King's death, said secretary returned said check of May 25, 1891. Between April 14, 1890, and March 1, 1891, various assessments were made upon the members in classes "B" and "C," upon which said King had been in arrears, and his delinquency had been the subject of correspondence between him and the defendant through its secretary. This feature of the case will be referred to in greater detail further on.

Two questions are presented for our consideration. The first of these relates to the service of the assessment notice of March 1, 1891 ; was it duly served? The evidence given by defendant's secretary and clerk shows that it was the custom of the defendant to send out notices on the first or second day in each month when assessments were made, and that according to the books of the defendant a notice was mailed to Job King on the 2d of March, 1891. But Tiffany, the secretary, testifies simply upon information derived from the clerk and the books, and Leonard, the clerk, says he has no personal recollection of sending the notices to King, but relies entirely upon the fact that the usual course of business required it, and that the books indicate that it was sent.

There is no affirmative evidence that the notice was ever received by King. To meet this difficulty defendant offers two suggestions: *First.* That the presumption of regularity as to defendant's corporate acts is sufficient to place the burden upon plaintiff of proving that the notice was not received; *second,* that plaintiff's counsel in summing up the case admitted the receipt of notice, and that his admissions are binding upon the plaintiff.

As to the first of these suggestions it may be enough to say that it was incumbent upon defendant to prove affirmatively that this member had, by some act or omission on his part, forfeited his rights under these certificates. Defendant's custom of sending notices, as proved upon the trial, was of course evidence which it was the duty of the jury to consider, but it was not conclusive.

We do not concur in the view of defendant's counsel, that the admissions of plaintiff's counsel upon the subject of notice take that question out of the case. It is undoubtedly the rule that an admission made by an attorney in open court, upon a question germane to the issue, is binding upon his client. (*Adee* v. *Howe,* 15 Hun, 20.) But this rule has its limitations; the client's responsibility cannot be extended beyond the fair import and meaning of the admission.

There is nothing upon the record to show precisely what the admissions were in this case. The court in its charge upon this subject says: "It has been suggested on the part of the counsel in the submission of the case that it was admitted that they had received these notices from time to time; while that admission has not gone upon the record, yet you have a right to take it into account in determining this question, which is submitted to you for your determination."

Thereafter defendant's counsel requested the court to charge " that they have the right to take into consideration, in arriving at their verdict, the admissions made by the counsel for the plaintiff upon his argument before the jury, the same as though it had been admitted in open court before submission." And the court so charged.

It will be observed that while defendant's request to charge was complied with, there is nothing upon the record which indicates the extent or the precise purport of the alleged admissions, or which permits us to assume that the question as to the notice of March

first was no longer one of dispute. The charge, which was quite as broad as the request, simply instructed the jury that they had a right to consider these admissions, whatever they were, the same as though they had been made in open court before the submission of the case.

How are we to determine, therefore, that the jury did not find against the defendant upon the question of notice? And if such was the finding, how can we say that it was not justified by the evidence?

The only remaining question to be considered relates to the exception taken by the defendant to that portion of the charge in which the jury were instructed " that unless the defendant association had received from the deceased from time to time these assessments after they became due according to the terms of the notices of assessment, and had established that line of credit with the deceased that led him to believe that it would be conducted in the future as in the past, then it would not be absolute to cut him off, it is a question for the jury," and to the exceptions taken upon the refusal of the court to charge as requested at folios 192 and 194 of the case.

We think the submission to the jury of the question whether the defendant, by its course of dealing with King, had waived any of the provisions of defendant's by-laws was proper. King became a member April 14, 1890. On December 30, 1890, defendant's secretary wrote a letter to King in which his attention was called to the fact that he had not paid his admission fee, and that he was " in arrears for an advance assessment in the ' C ' class, $2.40, together with ass. No. 2 for same (which expired Sept. 5th), making a total of $6.80." The letter concluded as follows: " Kindly let us know what disposition you wish made of the matter." In relation to this delinquency the secretary testifies: " I cannot tell whether the health certificate was required in this letter or not." Payment of this six dollars and eighty cents was received on January 30, 1891, and again the secretary says: " I have no means of knowing personally that any health certificate was required at the time this $6.80 was paid." On February 12, 1891, a payment for eight dollars and thirty-four cents was received, " on account of assessment for Nov., Dec. and Jan." Upon the receipt was indorsed this memorandum: " Feb. ass't $2.78 expires Feb. 20th, '91. Please remit."

The secretary again testifies: " I do not know whether any health certificate was required at this time or not." Receipts given by the defendant to King, dated July 15, 1890, August 5, 1890, October 6, 1890, and October 20, 1890, show that payments were credited to King " *to be applied as the condition of his account may indicate.*" Health certificates were required in only two instances before the receipt by the defendant on May 25, 1891, of the fifteen-dollar check; one on October 4, 1890, because. of the non-payment of the assessment due September 20, 1890, and the other on March 10, 1891, for non-payment of assessment due February 20, 1891.

It is true that in March and April, 1891, assessment notices were sent out containing the following clause : " The sending of this notice shall not be held to waive any forfeiture or lapse of certificate caused by non-payment of an amount previously due," and the further indorsement in red letters: " This notice is sent as a matter of information that you may know the amount of arrearages which you will be required to pay should you desire to make application for reinstatement. Bear in mind that so long as you are in arrears you are not entitled to the benefits of the association."

There is, however, no evidence showing that these notices were in fact served upon King, except as appears by the statements of Tiffany and Leonard, which must be taken with the qualification that they testify from their knowledge of the usual course of business rather than from personal recollection in this instance.

The admissions of counsel, above referred to, cannot be said to apply more specifically to these notices than to any other; but a more conclusive answer to the argument which these notices seem to furnish the defendant lies in the fact that there is nothing to show that the same form of notice was not used during the period of 1890 when the payments from King were repeatedly received after they had lapsed. Neither is there any evidence showing that anything was ever done by defendant to terminate King's membership except by the sending of notices, the terms of which it disregarded when it chose to do so.

It was entirely reasonable for the jury to infer that the course of dealing between the defendant and King had not been changed and was not strictly in conformity with the by-laws or the provisions of these notices. It does not lie in. the mouth of the defendant to say

that its members are bound by the strict letter of its by-laws and resolutions so long as it appears that they were waived or ignored by the defendant.

It should be borne in mind that neither the saving clause of these notices nor the provision requiring health certificates from lapsed members, is a subject which is regulated by the by-laws of the defendant. These matters seem to have been acted upon by the secretary in the exercise of the power and discretion given him by the board of directors.

The presumption of regularity which is claimed for defendant's corporate acts cannot be held conclusive as against evidence to the contrary, and all disputed questions arising therefrom were properly submitted to the jury.

This discussion leads us to conclude that the case is brought fairly within the rule of *Baker* v. *N. Y. S. Mutual Benefit Assn.* (9 N. Y. St. Repr. 653) and *Griesa* v. *The Mass. Ben. Assn.* (39 id. 1), holding that prompt payment of assessments may be waived, and the right to treat the contract as forfeited suspended, by a course of dealing between the association and a member, which gives the latter a right to assume that prompt payment will not be strictly enforced; and of *Shay* v. *National Benefit Society* (54 Hun, 109), deciding that the sending of a second notice, when a member is in arrears, is a waiver by the association of its right to treat the contract as terminated; and of *Kolgers* v. *Guardian Life Insurance Co.* (10 Abb. Pr. [N. S.] 176), that upon disputed evidence the question of waiver is for the jury.

It having been conceded upon the trial that the refusal of defendant's secretary to furnish plaintiff with blanks for proofs of death constituted a waiver of the right to demand such proofs, that question need not be considered.

We are of the opinion, therefore, that the charge contains no errors which were detrimental to the defendant; that the case was properly submitted to the jury, and that the verdict is sustained by the evidence.

Judgment affirmed, with costs.

LEWIS, BRADLEY and WARD, JJ., concurred.

Judgment affirmed.