BEATTY v. MUTUAL RESERVE FUND LIFE ASS'N.

(Circuit Court of Appeals, Ninth Circuit. June 1, 1896.)

No. 261.

1. ASSESSMENT INSURANCE—NONPAYMENT OF CALLS—WAIVER—QUESTION FOR JURY.

Plaintiff held a policy of insurance on the life of one S., a debtor to plaintiff, issued by defendant, an assessment insurance company. The policy contained an express condition that, if any assessment was not paid when due, the policy should be void, and all previous payments forfeited. In an action on the policy it appeared that an assessment was made, which became due and payable May 1, 1889, and that plaintiff, on May 3d, tendered to the defendant's agent the amount thereof, which the agent refused to accept, without consultation with the company, and after such consultation refused to accept unless a certificate of health was furnished. Plaintiff testified that he was unable to draw the money to pay the call from the bank on May 1st, because that day was a holiday, and that on the 2d he could not find defendant's agent, though he looked for him; that he had paid several previous calls to the company, after maturity, though in every case but one he furnished a health certificate; that he had had a conversation with the secretary of the defendant, at its home office, in which the secretary said that the part of the country where plaintiff resided was so distant that they were not particular about time; that he supposed, from their previous dealings, that the company would be willing to accept the assessment after May 1st. He also testified that after the refusal of the agent to accept the amount due May 1st, except upon conditions, he received notice of a subsequent assessment, in the usual form of such notice, requesting payment, and stating that the sending thereof should not be held to waive any forfeiture for nonpayment of previous calls, and that he tendered payment of the amount of such call. *Held*, that the question whether a course of dealing was shown which would estop the defendant to claim a forfeiture, because the call of May 1st was paid a few days too late, and whether any forfeiture which had occurred had been waived by the levy of the second assessment, were for the jury, and it was error to direct a verdict for the defendant.

2. SAME.

If, after a member of an assessment insurance company has become delinquent by failure to pay a call, the nonpayment of which renders his policy subject to forfeiture, a new assessment is levied upon him, with full knowledge of such delinquency and nonpayment, this will constitute a waiver of the forfeiture, even though the notice of the assessment contains a warning that the sending thereof is not to be held to waive a forfeiture.

Error to the United States Circuit Court for the Northern District of California.

This is an action brought by George W. Beatty, the plaintiff in error, to recover from the defendant the sum of $4,000 on a certificate or contract of insurance upon the life of Edwin L. Smith, a debtor of the plaintiff. The certificate of insurance declares that:

"In consideration of the application for this certificate of membership, * * * and in further consideration of the admission fee paid and of the dues for expenses to be paid on or before the sixth day of May in every year during the continuance of this certificate, and of the further payment of all mortuary assessments, payable at the home office of the association in the city of New York within thirty days from the day of the date that each assessment is ordered, the Mutual Reserve Fund Life Association * * * does hereby receive Edwin L. Smith, of San Francisco, * * * as a member

of said association. Within ninety days after receipt of satisfactory evidence to the association of the death of the above-named member during the continuance of this certificate of membership, upon the following conditions, there shall be payable to George W. Beatty (creditor) as his interest may appear * * * the sum of four thousand dollars from the death fund of the association. * * * If, at such date as the board of directors of the association may, from time to time, fix or determine for making an assessment, the death fund is insufficient to meet existing claims by death, an assessment shall then be made upon every member whose certificate is in force at the date of the last death assessed for, and said assessment shall be made at such rates, according to the age of each member, as may be established by the said board of directors, and the net amount received from such assessment (less twenty-five per cent., to be set apart for the reserve fund) shall go into the death fund. * * * The entire contract contained in this certificate and said application, taken together, shall be governed by, subject to, and construed only according to the constitution, by-laws, and regulations of said association and the laws of the state of New York. * * * This certificate is also issued and accepted subject to the express condition that if any of the payments above stipulated shall not be paid when due, at the home office of the association in the city of New York, or to an agent of the association furnished with a receipt signed by its president, secretary, or treasurer, * * * the consideration of this contract shall be deemed to have failed, and this certificate shall be null and void, and all payments made thereon shall be forfeited to the association."

The constitution and by-laws, among other things, provide that:

"The corporate powers of the association shall be vested in the board of directors, who shall have power to adopt such rules and regulations as they deem necessary, not inconsistent with this constitution or by-laws, and to amend the same; and to fix the amount and rate of assessments, fees, and dues; and to enact rules and regulations for the government of officers and employés, and for the management of the affairs of the association. The directors shall elect three of their number, who shall constitute an executive committee, who shall * * * have the power to make contracts * * * for the furtherance of the business of the association and for the benefit of its members. And, under the regulations of the board, they shall also exercise a general supervision over the business of the association." Article 11, § 5. "On the first week days of the months of February, April, June, August, October, and December, of each year (or at such other dates as the board of directors may, from time to time, determine), an assessment shall be made upon the entire membership in force at the date of the last death of the audited death claims prior thereto, for such a sum as the executive committee may deem sufficient to meet the existing claims by death, the same to be apportioned among the members according to the age of each member. *. * * A failure to pay the assessment within thirty days from the first week day of February, April, June, August, October, and December (or within thirty days from the day of the date of such periods as may be named by the directors), shall forfeit his membership in this association, with all rights thereunder, and the certificate of membership shall be null and void."

The certificate in question was issued May 15, 1884. Plaintiff paid all the assessments made by the association, to-wit, assessments 15 to 42, all of which were made, as provided for in the constitution, by the executive committee. On March 27, 1889, the executive committee made an assessment, or call, known as "Mortuary Call No. 43," which became due and payable May 1, 1889. Due notice of this call was sent to and received by plaintiff. It contained, among other things, the following statement:

"The sending of this notice shall not be held to waive any forfeiture or expiration of membership caused by the nonpayment of any previous annual dues or mortuary calls. The above mortuary call is now due, and should

be paid at once. If not paid on or before May 1, 1889, the policy will expire, and becom . and be null and void."

C. T. Park was the local treasurer of the association. He was also the cashier of a bank at San José, Cal.

Plaintiff testified as follows:

"Upon receiving notice of call 43, I paid it to Mr. Park, agent of the company. He refused to accept the money as payment of call 43 * * * until he heard from the company. I paid call 43 on May 3, 1889. The annual dues for that year I paid May 6, 1889, the day it was due, * * * to Mr. Park. He accepted it subject to the decision of the company. I put the money in his hands as the local treasurer of the company, and it was kept there until some time in November, 1890. That money was to pay the annual dues of that year (1889) and said mortuary call 43. It was enough for both,—$39.12 for call, and $8 annual dues. I wrote the company two or three letters in the meantime. They refused to receive it, except on condition that I furnish health certificate. He (Mr. Park) said it had not been paid on time. * * * The financial reason why I did not pay on the 1st of May was, I went to the bank at Los Gatos, and the bank was closed on that day, because it was a holiday there; and I had frequently paid a few days after, and thought it would not matter; and I waited until the next day. During the course of my dealing with the company I paid late, I think, six or seven times." Calls Nos. 16, 17, 20, 25, 26, and 42 were paid after the 30 days had expired. Health certificates were required in all but one of these calls. Plaintiff further testified: "I received another notice of call 44 * * * about the regular time for sending them. * * * I offered to pay it. I went to Mr. Park, and he refused to take it, because there was money on deposit for payment of call 43; and it was useless, he said, to take any more money. I had the money in my pocket at the time I tendered it in words. * * * I corresponded with them afterwards in relation to the subsequent call. I received one subsequent call from the company before Mr. Smith died, on December 10, 1890. Q. This 43d call was in May, 1889,—a difference of 19 months. What did you do during those 19 months in regard to the payment of calls? A. As I said several times before, Mr. Park refused the money because he had $47 on deposit. He said it was useless to pay any more until we adjusted that other matter, No. 43. He gave me a blank certificate of health to have filled out and executed by Mr. Smith. The reasons I did not have it signed were the man was getting too old to examine him every few months, his health was poor, and I felt they had no right to have a health certificate at all; and the other reason was, I could not find Mr. Smith. I could not find his address when I came to San Francisco to look for him. I came back again, and some months afterwards I found he was in Tacoma. But I could not communicate with him there, and I knew the company had waived that all along. The reason why I did not pay these calls in time may have been because I was not in condition financially to do so. That may be one reason. When I was in New York I had a talk with the assistant secretary, in which he said that California was so distant, they were not particular about time. * * * I arrived in San José on May 2, 1889. I went down to the bank, where I usually found Mr. Park, and the bank was closed. I went to gentlemen near there, and asked them if they knew his residence, or where I might find him, and none of them knew, and I supposed from their past action that if I went in the morning it would be the same; that is, on May 3d. I am sure I received mortuary call No. 44. I am not positive whether I received 45 or not."

The cause was tried before a jury. At the close of all the testimony, the court, at the request of defendant's counsel, instructed the jury to find a verdict in favor of the defendant. This instruction was granted upon the grounds: (1) Because the plaintiff drew down the amounts paid to Park in May, 1889, prior to the death of Smith; (2) because there was no compliance with the policy on

the part of the plaintiff; and (3) because there was no conduct on the part of the defendant waiving the forfeiture that had occurred.

J. C. Bates, for plaintiff in error.

I. B. L. Brandt, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after stating the case, delivered the opinion of the court.

1. Did the court err in instructing the jury to find a verdict for defendant? This is the ultimate question for decision in this case. But to reach a proper decision other questions must be discussed and disposed of. Certain elementary principles will first be noticed, as they furnish the keynote to a proper solution of the main question. The law is well settled that when the evidence in any given case is conflicting, or the facts therein disputed, or where the facts are of such a character that different minds might honestly draw different conclusions from them, the case must be left to the jury for their determination. In other words, a case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish. Railroad Co. v. Stout, 17 Wall. 657, 663; Moulor v. Insurance Co., 101 U. S. 708; Insurance Co. v. Doster, 106 U. S. 30, 32, 1 Sup. Ct. 18; Bank v. Morgan, 117 U. S. 96, 122, 6 Sup. Ct. 657; Humiston v. Wood, 124 U. S. 12, 8 Sup. Ct. 347; Kane v. Railway Co., 128 U. S. 91, 9 Sup. Ct. 16; Jones v. Railroad Co., 128 U. S. 443, 9 Sup. Ct. 118; Dunlap v. Railroad Co., 130 U. S. 649, 652, 9 Sup. Ct. 647; Russell v. Post, 138 U. S. 425, 11 Sup. Ct. 353; Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679; Railroad Co. v. Cox, 145 U. S. 594, 606, 12 Sup. Ct. 905; Gardner v. Railroad Co., 150 U. S. 349, 361, 14 Sup. Ct. 140; Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387. It is equally true, and as well settled, that when the undisputed evidence is so conclusive that the court would, under the law, be compelled to set aside a verdict returned in opposition to it, it may and should withdraw the case from the consideration of the jury, and direct a verdict. Pleasants v. Fant, 22 Wall. 116, 122; Herbert v. Butler, 97 U. S. 319; Griggs v. Houston, 104 U. S. 553; Randall v. Railroad Co., 109 U. S. 478, 482, 3 Sup. Ct. 322; Schofield v. Railway Co., 114 U. S. 615, 618, 5 Sup. Ct. 1125; Goodlett v. Railroad Co., 122 U. S. 391, 7 Sup. Ct. 1254; North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U. S. 727, 8 Sup. Ct. 266; Gunther v. Insurance Co., 134 U. S. 110, 116, 10 Sup. Ct. 448; Railroad Co. v. Converse, 139 U. S. 469, 472, 11 Sup. Ct. 569; Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85.

The defendant in error claims that no legal assessment was ever made, or notice of such given, on which to base a forfeiture. This contention is made upon the ground that the assessments must be made by the board of directors, and that it could not be delegated to the executive committee. It is undoubtedly true that the as-

sessments must be legally made in order that the failure of a member to pay them shall work a forfeiture of his rights of membership. They can only be valid when made under and upon the conditions stated in the charter and by-laws. If the charter authorizes the directors to make an assessment, it can only be made by them. Every fact authorizing an assessment to be made must exist, and every act required of the society must be performed, before an assessment can be legally levied, which a member must pay or forfeit his right of membership. Nibl. Mut. Ben. Ins. §§ 250, 252, and authorities there cited. If the charter in the present case required the assessments to be made and levied by the board of directors, the position contended for by plaintiff would have to be sustained. But we are of opinion that, under a proper construction of the various provisions of the charter, the duty of making the assessment is vested in the executive committee, and that the certificate of insurance is issued subject to this provision. Moreover, the plaintiff treated all the assessments made by the association as valid and binding.

2. Was there such a course of dealing between the plaintiff and defendant as to justify plaintiff in believing that payment of the assessments within a few days after the time fixed for the payment thereof would be accepted by the defendant? Did the defendant waive the forfeiture of the policy by sending a notice of call 44 to plaintiff? Was there any evidence upon these points of such a character as to raise a question of fact which required the case to be submitted to the jury? With reference to the course of dealing, the rule is clearly and correctly stated in Bacon on Benefit Societies (section 433) as follows:

"If the company has, by its course of conduct, acts, or declarations, or by any language in the policy, misled the insured in any way in regard to the payment of premiums, or created a belief on the part of the insured that strict compliance with the letter of the contract as to payment of the premium on the day stipulated would not be exacted, and the insured in consequence fails to pay on the day appointed, the company will be held to have waived the requirement, and will be estopped from setting up the condition as cause for forfeiture. In determining whether there has been a modification of the terms of the policy by subsequent agreement, or a waiver of the forfeiture incurred by the nonpayment of the premium on the day specified, the test is whether the insurer, by his course of dealing with the assured, or by the acts and declarations of his authorized agents, has induced in the mind of the assured an honest belief that the terms and conditions of the policy, declaring a forfeiture in event of nonpayment on the day and in the manner prescribed, will not be enforced, but that payment will be accepted on a subsequent day, or in a different manner; and when such belief has been induced, and the insured has acted on it, the insurer will be estopped from insisting on the forfeiture."

Numerous authorities are cited in the text in support of the rule, and in addition thereto we cite the following: Insurance Co. v. Eggleston, 96 U. S. 572, 577; Insurance Co. v. Doster, 106 U. S. 30, 35, 1 Sup. Ct. 18; Insurance Co. v. Unsell, 144 U. S. 439, 449, 12 Sup. Ct. 671; Dennis v. Association, 120 N. Y. 496, 505, 24 N. E. 843; King v. Association, 87 Hun, 591, 597, 34 N. Y. Supp. 563; Insurance Co. v. Warner, 80 Ill. 410; Association v. Win-

dover, 137 Ill. 417, 27 N. E. 538; Silverberg v. Insurance Co., 67 Cal. 36, 39, 7 Pac. 38; Association v. Jones, 84 Ky. 110, 117; Sweetser v. Association, 117 Ind. 97, 101, 19 N. E. 722. A waiver is often a mixed question of law and fact. Each case must necessarily depend upon its own peculiar circumstances, conditions, and surroundings. But in all cases where there is any substantial evidence of a waiver of any of the rules or regulations of the insurance company, or of any of the provisions of its charter or by-laws, the question as to whether there has been a waiver or not should be submitted as a matter of fact, under instructions of the court, for the jury to decide. In the present case the plaintiff, after stating the acceptance of previous assessments by the association several days after the same became due, and that he had been informed by the assistant secretary in New York that the association was not particular as to the time of payments in California, testified that he tried to find the agent on the afternoon of May 2, 1889 (May 1st being a holiday), that he supposed from the past action of the association that it would make no difference if he did not pay call No. 43 until the next day, May 3, 1889. Did the plaintiff, as a reasonable and prudent man, have the right to believe from the whole course of his dealing with the association that a few days delay would make no difference? All the authorities declare that such a course of dealing may be pursued by insurance companies and mutual benefit associations as will estop them from saying that there was no agreement to receive any premiums or calls after the same became due, after they have permitted their policies or certificates to stand open and remain uncanceled, and especially after they have accepted payments of premiums or assessments overdue. One party to a contract ought not to be permitted to make an outward show of continued leniency, repeated with such uniformity, or in such a manner, as to put another off his guard, and then afterwards, by a sudden change in his course of conduct, declare a forfeiture, when the other party has been misled, and is helpless to avert the consequences. In Margarge v. Insurance Co., 86 Pa. St. 236, where it was the general practice of the company to receive overdue premiums, the court said:

"No vestige of reason is discoverable for refusing the premium tendered the second day after it became due. The company had twice before taken it under precisely similar circumstances, and in entire accord with the general practice. * * * In the midst of a general usage, to receive premiums after the stipulated day, when the assured was in usual health, the company, if intending to enforce forfeiture, should not deal with the assured as if recognizing the general practice, nor give him a notice with one hand and lull him to sleep with the other."

It is true that insurance companies and mutual benefit associations have the unquestioned right to rely strictly upon the conditions of their contracts, and if the policy holders in the one case, or parties holding certificates of membership in the other, do not strictly comply with the covenants therein contained, they have no cause of complaint if, upon their failure so to do, their policies or certificates are declared forfeited. But neither the insurance.

companies nor the benefit associations have any right to simply waive the conditions when it is beneficial for them so to do, and thereafter, under like circumstances, endeavor to enforce a forfeiture for their own benefit. There should be equality and mutuality. They cannot say at one time to the holder of a policy or certificate that, "All we desire is your money, even if the premium or assessment is past due," and accept it, and then at another time, or after the death of the insured, say that, "You did not pay your premium or assessment when due, and our contract declares that, if not promptly paid, you have forfeited all your rights." A forfeiture not being favored in the law, and being a matter of strict legal right, it follows that the party asserting it should be able to show that it has always inflexibly adhered to and insisted upon a strict compliance with the terms of its contract. In Insurance Co. v. Unsell, supra, the court said that the law applicable to that case was stated to the jury with substantial accuracy in the following instruction:

"But the plaintiff says that, beyond these receipts of money after the day specified. there were instances in which money was received without any such notice. Now, the question comes up, in respect to that, was there such a continuance of business, was the whole course of business from the commencement to the close such that from this and that, and from all the receipts and all the transactions, he had a right to believe, and did believe, that the question of health even would not be considered, and that it would be willing to take his money shortly after it had become due, without inquiry as to his health? If so, that makes a waiver. If the company, by its conduct, led him, as a reasonable and prudent business man, to believe that he could make payments a few days after, sick or well, it cannot turn around now and say, 'You did not pay at the time.' I cannot say to you as a matter of law that one receipt after the time specified would make a waiver, or that fifty would. It is not in the numbers. The question is for you to consider and determine from all of them, and from the whole course of business, whether, as a prudent business man, he had a right to believe that it was immaterial whether he paid on the day or a few days later. If the course of conduct was such that he had a right to believe that he could pay only in good health, then there was no waiver applicable to the case at bar. It must have been such a course of conduct as would lead a reasonably prudent man to believe that the company was willing to take payment sick or well."

We deem it unnecessary to discuss at any length the question touching the subsequent withdrawal of the money paid by plaintiff to Park on the assessment of call 43. If it be true that a jury, under the evidence, would have the right to infer that the association had pursued such a course of dealing as to induce the plaintiff, as a reasonable man, to believe that it would not object to receive the money within a few days after it fell due, then, in order to protect his rights, it would have been sufficient for him to have simply made a tender of the amount due, without paying over the money, as the agent refused to give him a receipt therefor, and thereafter to hold himself in readiness at all times to pay the same upon request. In Wait's Actions and Defenses (volume 7, p. 592), it is said:

"When a debtor has made a tender of money in pursuance of the terms of a contract, it is his duty to keep the money safely, so as to be prepared at

all times to produce it when required, to keep his tender good. * * * He is, however, at liberty to use it as his own. All he is under obligation to do is to be ready at all times to pay the debt in current money when requested."

See, also, 25 Am. & Eng. Enc. Law, 901.

There is a conflict in the testimony as to whether the money was paid to the agent of the association. Park, the agent, testified that plaintiff made the tender on mortuary call No. 43 on the 3d of May, 1889, and that "when he made the tender I gave him a memorandum, showing that he had deposited that money with me as cashier of the Bank of San José. * * * This money was repaid to him November 11, 1890." But the precise manner of the payment is immaterial. The tender is admitted to have been legally made. The plaintiff did not deprive himself of the right to maintain this action by withdrawing the money, if the evidence upon other grounds is sufficient to enable him to maintain the same.

The right of plaintiff to have this case submitted to a jury does not solely depend upon the course of conduct of the defendant in receiving previous payments after the time when the assessments became due, and is not to be confined simply to the acts of the association in relation to call No. 43, because it appears from the evidence that the defendant, after its refusal to receive payment on mortuary call No. 43, except upon certain conditions, regularly levied assessment No. 44, and sent a notice thereof in the regular manner and usual form to the plaintiff, requesting payment thereof, and that payment thereof was legally tendered in due time by the plaintiff to the agent of the association at San José. The tender of an assessment is just as effectual to preserve the rights of a member of a mutual benefit society as the payment of the assessment. For the purpose of avoiding penalties and forfeitures, or the loss of any right or privilege, a tender is the exact equivalent of payment, and it does not have to be repeated. Nibl. Mut. Ben. Soc. § 279. Where a society has declared a contract forfeited, and has refused to receive an assessment from a member after a legal tender has been made, his subsequent failures to tender assessments will not affect his right to recover on the contract. Meyer v. Insurance Co., 73 N. Y. 516, 524; Miesell v. Insurance Co., 76 N. Y. 115, 118. If, therefore, it should be conceded that the course of dealing already referred to was not of itself sufficient to constitute a waiver, and that, ipso facto, the failure to pay call 43 operated as a forfeiture, and that the association had the right to declare the certificate or contract forfeited for nonpayment within the stipulated time of call 43, yet if, after the insured had thus become delinquent, a new assessment was made with full knowledge of such delinquency and nonpayment, this would constitute a recognition of the continued validity of the certificate, and would of itself amount to a waiver of all pre-existing rights of forfeiture. In Niblack on Benefit Societies (2d Ed., § 305), the rule is stated as follows:

"It may be laid down as the general rule that every time a society levies an assessment on a member who has failed to pay a previous assessment

within the time prescribed by its laws, it waives the forfeiture of the contract for such failure to pay, and acknowledges that, notwithstanding the nonpayment, he is one of its members."

The reason of this rule is a sound one. The society has a right to declare the contract forfeited if the assessment is not paid within the stipulated time, but this forfeiture is for the benefit of the association, and the levy of an assessment upon a delinquent member is a clear recognition of the validity of the contract, and an acknowledgment of his rights as a member. Murray v. Association, 90 Cal. 402, 408, 27 Pac. 309; Stylow v. Insurance Co., 69 Wis. 224, 34 N. W. 151; Jackson v. Association, 78 Wis. 463, 472, 47 N. W. 733; Wright v. Supreme Commandery, 87 Ga. 426, 13 S. E. 564; Association v. Koontz (Ind. App.) 30 N. E. 145; Insurance Co. v. Wilder, 35 Neb. 573, 53 N. W. 587; Association v. Windover, 137 Ill. 417, 432, 27 N. E. 538.

The claim of defendant that the sending of the notice of assessment No. 44 was not a waiver of the forfeiture resulting from the nonpayment of No. 43 within time, on the ground that the notice itself contained the words, "The sending of this notice shall not be held to waive any forfeiture or expiration of membership caused by the nonpayment of any previous annual dues or mortuary calls," for the reason already stated, cannot be sustained. If, as defendant claims, under the rules and by-laws of the association, membership therein ceased by the nonpayment of an assessment within the time prescribed for its payment, then it was the duty of the association to drop such member from its rolls, and not levy any further assessments against him. In King v. Association, the court said: "It does not lie in the mouth of the defendant to say that its members are bound by the strict letter of its by-laws and resolutions, so long as it appears that they were waived or ignored by the defendant." In Association v. Koontz, the court sustained an instruction which substantially stated that, if there was a further delinquency, and during that delinquency appellant made a further assessment against the appellee to pay losses sustained by other members of said association, such would constitute a waiver of forfeiture of said policy at that time. Forfeitures are not favored by the law, but, when appellee was delinquent, under the rules and regulations of said association, appellant could declare appellee's policy forfeited; yet, if not so done, the law would not forfeit it. It was the right the appellant had when the appellee was delinquent in payment of assessments legally made to forfeit his policy by some act of the company; but a failure to declare such forfeiture, and to continue to make assessments upon it, would be treating the policy in full force and not forfeited.

We are of opinion that there was sufficient evidence upon the points we have discussed to justify the submission of this cause upon the facts, under proper instructions from the court as to the law, to the jury, and that the court erred in instructing the jury to find a verdict for the defendant. The judgment of the circuit court is reversed, with costs, and the cause remanded for a new trial.