MUTUAL RESERVE FUND LIFE ASS'N v. BEATTY.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1899.)

No. 459.

1. APPEAL—REVERSAL—DECISION AS LAW OF CASE
    Where a case has been once before an appellate court, and reversed, the decision becomes the law of the case, and the same questions will not be again reviewed on a subsequent appeal or writ of error.

2. LIFE INSURANCE—ACTION ON POLICY—EVIDENCE.
    On an issue as to whether a life insurance company had by its course of conduct waived the right to insist on a forfeiture of a policy because the assured failed to pay an assessment within the time stated in the written notice, the fact that the assured had not been financially able at all times to meet the payments promptly is immaterial.

3 BANKRUPTCY—EFFECT OF DISCHARGE—NEW PROMISE.

Though the remedy for the enforcement of a debt is lost by the discharge of the debtor in bankruptcy, the moral obligation to pay remains, and is a good consideration for a new promise, and such new promise may be oral.

In Error to the Circuit Court of the United States for the Northern District of California.

This is an action at law brought by George W. Beatty, defendant in error (plaintiff below), as beneficiary in a certain certificate or contract of insurance issued by the plaintiff in error on the life of Edwin L. Smith, of San Francisco, Cal. It is alleged in the complaint "that on the 15th day of May, 1884, at the city of New York, state of New York, said defendant made and issued its certificate of membership to one Edwin L. Smith, of the city and county of San Francisco, state of California, in consideration of certain matters and payments in said certificate mentioned, and hereby referred to, for the use and benefit of the plaintiff herein, George W. Beatty (creditor), by which said certificate said defendant insured the life of said Edwin L. Smith in the sum of $4,000, payable to the plaintiff herein, George W. Beatty, as his interest may appear, if living at the time of the death of said Smith, otherwise to the legal representatives of said Smith, within ninety days after receipt of satisfactory evidence to the said defendant of the death of said Smith during the continuance of said certificate, upon certain conditions in said certificate contained; that on the 10th day of December, 1890, at the city of Oakland, county of Alameda, state of California, said Edwin L. Smith died intestate, a resident of Alameda county, California; that said plaintiff, George W. Beatty, paid the admission fee, all dues for expenses, and all mortuary assessments mentioned in said certificate, as required by it to be paid, up to the 3d day of May, 1889, amounting in the aggregate to $1,013.07, and offered and was ready to pay all subsequent dues and assessments, but that said defendant willfully refused to receive the same, and said plaintiff gave to said corporation defendant immediate notice of the death of said Edwin L. Smith, and also on or about the 15th day of January, 1891, plaintiff gave and furnished to said corporation defendant, in writing, at its place of business in the state of New York, satisfactory evidence of the death of said Smith, * * * and requested payment to him of said sum of $4,000 on the 23d day of February, 1891; that the plaintiff herein, George W. Beatty, as a creditor of said Smith, had a valuable interest in the insurance of the life of said Edwin L. Smith at the time of effecting the said insurance, to wit, $5,000, and he ever since has had, and now has, such valuable interest, as a creditor of said Smith, and that there is now due, owing, and unpaid to said plaintiff, George W. Beatty, the sum of $1,013.07, for money so paid and expended by him as yearly dues and assessments, as hereinbefore set forth, with interest thereon at the rate of seven per cent. per annum, in addition to said $5,000 so owing to him as aforesaid, and that no part of which has been paid." The defendant, in its amended answer, admits that it issued the certificate mentioned in the complaint, but denies the other material allegations of the complaint, and alleges, among other things, that the certificate of membership of the said Edwin L. Smith, and all the rights of the said Edwin L. Smith, and of the plaintiff herein, became and were and are subject to the terms and provisions of the constitution and by-laws of the defendant association, all of which are referred to and made a part of the answer; that in and by said constitution and by-laws it was, among other things, provided as follows: "On the first week day of the months of February, April, June, August, October, and December of each year, or at such other dates as the board of directors may from time to time determine, an assessment shall be made, upon the entire membership in force at the date of the last death, of the audited death claims prior thereto, for such a sum as the executive committee may deem sufficient to meet the existing claims by death; the same to be apportioned among the members according to the age of each member. A member failing to receive a notice of an assessment on the first week day of February, April, June, August, October, and December, for his share of the losses occurring durizg

the time specified, it shall be his duty to notify the home office, in writing, of such fact. A failure to pay the assessment within thirty days from the first week day of February, April, June, August, October, and December, or within thirty days from the day of the date of such periods as may be named by the directors, shall forfeit his membership in this association, with all rights thereunder; and the certificate of membership shall be null and void." It is further alleged "that on the first week day of April, 1889, to wit, April 1, 1889, an assessment or mortuary call of $39.12 was duly made by the defendant association upon the said Edwin L. Smith, under said certificate, and a due notice thereof, according to the usual course of business of the defendant association, was on said day deposited and mailed in the post office of the city of New York, state of New York, with postage paid thereon, addressed to George W. Beatty, the plaintiff herein, at Los Gatos, Santa Clara county, California; that being the post-office address of the said Edwin L. Smith, and of the said plaintiff, upon the books of the defendant association. And this defendant alleges that the said Edwin L. Smith and the said George W. Beatty, the plaintiff, for more than thirty days after the giving of said notice as aforesaid, and for more than thirty days after the date of the same, failed and neglected to pay said assessment or mortuary call, or any part thereof, and said assessment or mortuary call is not, and never has been, paid, and by reason thereof said certificate is null and void, and became and was null and void prior to the death of the said Edwin L. Smith, and prior to May 3, 1889, to wit, from and after May 2, 1889, and that prior to May 3, 1889, to wit, from and after May 2, 1889, the said Edwin L. Smith ceased to be a member of the defendant association; that the dues for expenses, which by the terms of said contract were to be paid on or before the 6th day of May in every year during the continuance thereof, amounted to the sum of $8 for each year; that the dues upon said certificate for the year 1889, amounting to the sum of $8, became due and payable on or before the 6th day of May, in the year 1889, but that the said Edwin L. Smith and the said George W. Beatty, the plaintiff, failed and neglected to pay the amount of such dues, or any part thereof, and said dues are not, and never have been, paid, and by reason thereof said certificate is null and void, and became and was null and void prior to the alleged death of said Edwin L. Smith, and prior to May 8, 1889, and that prior to May 8, 1889, to wit, from and after May 7, 1889, the said Edwin L. Smith ceased to be a member of the defendant association, and by reason thereof said certificate is null and void, and became and was null and void prior to the date of the alleged death of the said Edwin L. Smith; that, upon and according to its information and belief, the said George W. Beatty, plaintiff, was not a creditor of the said Edwin L. Smith at the time the certificate of membership referred to in said complaint, and upon which this action has been brought and is now pending, was applied for."

The trial of the cause was had before a jury. It appears from the testimony that the certificate in question was issued May 15, 1884, and the assessments levied thereon by the plaintiff in error prior to the assessment in controversy were 28 in number, and were designated as mortuary calls numbered 15 to 42, inclusive, amounting to $981.50. There were also dues for expenses amounting to the sum of $8 for each of the years 1884, 1885, 1886, 1887, and 1888, amounting to $40. These assessments and dues for expenses were paid by the defendant in error, the insured contributing a portion of the funds required to meet the demands as they came due. Mortuary call No. 43 was for $39.12, and was made on April 1, 1889, becoming due May 1, 1889. The dues for expenses for 1889, amounting to $8, were due on May 6, 1889. On May 3, 1889, the defendant in error tendered payment of both claims, in the sum of $47.12, to the local agent of the plaintiff in error at San Jose, Cal., who refused to accept the same on behalf of the company, but did receive the amount on deposit in the bank with which he was connected, giving a conditional receipt therefor, and reported the matter to the home office of the association, in the East. The association declared the contract of insurance forfeited by the failure of the defendant in error to pay mortuary call No. 43 within the period of 30 days provided in the notice.

The plaintiff (defendant in error here) was called as a witness on his own behalf, and testified, among other things, that he was the party named in the

certificate of insurance as the beneficiary; that he had paid six calls or assessments after they became due, to wit: "Call No. 16 was paid 34 days late; that is, it was received in New York 34 days after it should have been,— the health certificate being given. Call No. 17 was received 9 days after time. I paid them directly to the company in New York. Call No. 20 was paid 5 days late, direct to New York, with a common receipt. Call No. 25 was paid to the home office, in New York, 49 days late. Call No. 42 became due, under the notice, March 4, 1889. I paid it on March 20, 1889. The notice of call No. 43 reached me the first week in April. Five notices were received before the money was received in New York of a subsequent assessment. As to call No. 43, I was in Los Gatos at the time, and on the last day of April there was a legal holiday, which prevented my entering the bank. I went to the bank, and could not enter. On the 1st day of May they had a local celebration of some kind, and the bank at Los Gatos was closed. It was May Day. I could not draw the money to pay the assessment. On the 2d I drew the money, and started for San Jose, but on my way I was called to see one of my parishioners, and was detained some little time. Reached San Jose a few minutes after 3 o'clock. Found the bank closed. Asked some gentlemen who were standing there if they knew where Mr. Park lived [Park was local agent at San Jose], but they did not seem to know; and, having paid others late, I believed it would make no difference, so postponed it until next morning. I called in the morning, after the bank opened, about 10 o'clock, and received a conditional receipt from Mr. Park for $39.12, the amount of that call. I paid the annual dues on May 6th, when they fell due. Between that time and the date of Mr. Smith's death I wrote to them several letters, and received several letters from them. I am positive I received notice of call No. 44. I am under the impression I received 45, because of my correspondence. I am not certain as to 45. When I got 44, I went to see Mr. Park, the local treasurer of the company, and tendered him the payment for that. He refused to accept it, saying that the money for No. 43 was still in his hands, and there was no need to take any more until he had come to some understanding about that. These notices of mortuary calls were substantially the same. They would vary in relation to some statements about the condition of the society. Otherwise they were the same. At the time that this application for insurance was made, which I think was in February, 1884, Mr. Smith owed me about $5,000, counting interest. He never paid that, nor any part of it. He paid for a time, after 1884, $60 a year on interest. Mr. Smith died on December 10, 1890. I communicated that fact to the company immediately, and sent them proof of death." Upon cross-examination the witness testified: "I forwarded the money for call No. 26 from Boston. I was not in San Jose. I was pastor there, but had gone East. I cannot recall the circumstance how this call happened to be forwarded late. I was in New York. I called for the secretary, and he introduced the assistant. I spoke to him about my difficulty, and the distance to California, and getting money there in time, and in that conversation he said they were not particular, as the places were far distant in California; that a few days did not seem to make any difference. I told him this one I should forward from there. I don't know that I have any reason for the cause of my delinquency. I tried to forward them in time, but I did not always do it. Call No. 42, which was due and payable on the 3d of March, was paid on or about the 20th of March, 1889, to Mr. Park. At the time I handed him the money for that call, he said something about my being late. He asked me for a certificate of health, which I refused to give, saying I did not think I should have him re-examined every month or two. He was getting to be an old man, and I thought it was not just. He gave me the receipt. He did not tell me at that time that he would receive the money conditionally. There was some conversation about the certificate of health, but I objected to giving it. I did not write to the company about it. It was already paid. The reason why I left the payment of call 43 to the last moment was because I thought and believed, from their past dealings, that, inasmuch as I could not get there, it would be immaterial. That is one reason. The other reason was, I was building a church, and was exceedingly busy, and money was scarce at times, so I postponed it late, for several reasons."

The deposition of Frederick T. Braman was taken on behalf of the defendant. He testified, substantially, that he was the secretary of the defendant; that there was default made in the payment of mortuary call No. 42, while said Smith was a member; that this call became due March 4, 1889, and was paid on March 20, 1889, whereupon defendant sent a certificate of health, to be signed by the said Smith and returned to defendant, which plaintiff refused and wholly failed to do; that mortuary call or assessment No. 16 was due and payable within 30 days from October 1, 1884; that it was not paid or tendered to the association within that time, but was subsequently tendered and accepted, and the policy reinstated, under and subject to the terms and conditions of a health certificate, and the receipt issued thereupon; that the health certificate was furnished, and the delinquent payment accepted and receipt issued on December 5, 1884; that mortuary call or assessment No. 17 was due and payable within 30 days from the 1st day of December, 1884; that it was not paid or tendered within that time, but was forwarded to and received by defendant on January 10, 1885; that it was accepted, and the policy reinstated conditionally, and dependent upon and subject to the terms of the conditional receipt which was issued and forwarded to, and accepted by, the plaintiff; that mortuary call or assessment No. 20 was due and payable within 30 days from June 1, 1885; that it was not received by the association until July 6, 1885, but, inasmuch as the postmark upon the letter in which it was inclosed showed that it had been forwarded within the 30 days allowed, it was accepted by the association as though actually received within the 30 days' grace, it being the rule of the association, in such cases, to regard the payment as made on the day the remittance is mailed, and, if so mailed within the time allowed, the payment is considered as made in time, and a regular receipt issued therefor, although the remittance may not be actually received at the home office until after the expiration of the time; that mortuary call or assessment No. 25 was due and payable within 30 days from the 1st day of April, 1886; that it was not paid or tendered until June 8, 1886, when it was accepted and the policy reinstated only upon a health certificate being furnished; that mortuary call or assessment No. 26 was due and payable within 30 days from the 1st day of June, 1886; that a remittance was received within that time, which apparently covered the amount of this call under the policy in question; that mortuary call or assessment No. 42 was due and payable within 30 days from February 1, 1889; that it was not tendered or paid until March 20, 1889, when it was received conditionally, pending the furnishing of a health certificate, and subject to such certificate being satisfactory to, and accepted by, the association.

C. T. Park testified on behalf of the defendant, in substance, among other things, that he was the local agent of the association at San Jose, Cal.; that he remembered when call 42 was made, and explained the circumstances of its payment as follows: "Plaintiff's Exhibit D [being C on this trial] is the receipt I gave him. It came to be given in this way: This call was due about March 1, 1889. He did not come to pay it within the time mentioned for the payment of that call. He came after this call was due, and offered me the money, which I declined to receive, for the reason that the instructions were very definite and specific. * * * Mr. Beatty offered this money to me after the expiration of the time mentioned for that call, and I declined to receive it and issue the receipt. I told him I would receive the money as an individual, or as an officer of the bank, and retain it for him, and notify the company that he had tendered it, and, if they instructed me to issue a receipt, I would do so. The company wrote back to me, instructing me to accept this payment, and requested me, at the same time, that Mr. Beatty should furnish a certificate of health. Mr. Beatty declined to furnish such a certificate, and I interpreted the instructions to mean to obtain it if possible. At all events, on the 20th day of March I issued this receipt, and remitted the amount to the company."

The foregoing is a sufficient reference to the testimony to explain the questions that will be discussed.

Upon the conclusion of the testimony, counsel for defendant moved the court to instruct the jury to return a verdict for the defendant. This instruction the court refused to give, and thereupon gave the instructions contained

in the record. The instructions to which exceptions were taken will be referred to later on in this opinion. The jury rendered a verdict in favor of the plaintiff (defendant in error) for $3,563.68, with interest and costs.

I. B. L. Brandt, for plaintiff in error.
George E. Bates, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

MORROW, Circuit Judge (after stating the facts as above). There are 28 assignments of error, and 17 specifications of error in support of one of these assignments, making 44 separate and distinct grounds which the plaintiff in error has assigned for a reversal of the judgment in favor of the defendant in error by the court below. The assignments of error relate to the admission of testimony over the objections of the plaintiff in error, the refusal of the court to instruct the jury as requested by the plaintiff in error, and the giving of instructions by the court to the jury over the objections of the plaintiff in error. This is the second time this case has been brought to this court, and, in the view we take of the questions involved, it will only be necessary to discuss such assignments of error as present questions arising upon the last trial.

Upon the first trial in the court below, after the testimony had been closed, counsel for defendant moved the court to instruct the jury to return a verdict for the defendant on a number of specified grounds,—among others, that it did not appear from the evidence that the plaintiff was a creditor of the insured, or that the plaintiff had an insurable interest in the life of the insured; that it appeared from the evidence that the assessment or call No. 43 was duly and regularly levied; that notice thereof was sent to the plaintiff; that he had received such notice; that call No. 43 was dated the 1st day of April, 1889; that it was to be paid on or before the 1st day of May, 1889; that no payment was made on that day, and that the evidence disclosed that tender thereof was made on the 3d day of May, 1889, but at that time the plaintiff was in default, and under the terms of the contract of insurance, as well as the application for such insurance, and according to the provisions of the constitution and by-laws and regulations of the association, the plaintiff was in default, and the insured had ceased to be a member thereof on account of the nonpayment of that call; that delinquency could not be tolerated or redeemed, except at the option of the company; that no excuse for avoiding forfeiture of a life policy, after delinquency in the payment of the premium, could be heard or entertained by the courts, and the courts could not grant relief against forfeiture in cases like the case at bar. The court instructed the jury to return a verdict for the defendant on the grounds stated in the motion of counsel for defendant, and a verdict and judgment were accordingly rendered in favor of the defendant. The plaintiff thereupon sued out a writ of error, and the case was taken to the circuit court of appeals. The opinion of

the circuit court of appeals upon the writ of error is reported in 44 U. S. App. 527, 21 C. C. A. 227, 75 Fed. 65. It was there held: That if an insurance company has by its course of conduct, acts, or declarations, or by any language in the policy, misled the insured in any way in regard to the payment of premiums, or created a belief on the part of the insured that strict compliance with the letter of the contract as to payment of the premium on the day stipulated would not be exacted, and the insured in consequence fails to pay on the day appointed, the company will be held to have waived the requirement, and will be estopped from setting up the condition as cause for forfeiture. In determining whether there has been a modification of the terms of the policy by subsequent agreement, or a waiver of the forfeiture incurred by the nonpayment of the premium on the day specified, the test is whether the insurer, by his course of dealing with the insured, or by the acts and declarations of his authorized agents, has induced in the mind of the insured an honest belief that the terms and conditions of the policy declaring a forfeiture in the event of nonpayment on the day and in the manner prescribed will not be enforced, but that payment will be accepted on a subsequent day, or in a different manner; and when such belief has been induced, and the insured has acted on it, the insurer will be estopped from insisting on the forfeiture. That a waiver is often a mixed question of law and fact, and each case must necessarily depend upon its own peculiar circumstances, conditions, and surroundings. But in all cases where there is any substantial evidence of a waiver of any of the rules or regulations of the insurance company, or of any of the provisions of its charter or by-laws, the question as to whether there has been a waiver or not should be submitted as a matter of fact, under instructions of the court, for the jury to decide. That one party to a contract ought not to be permitted to make an outward show of continued leniency, repeated with such uniformity or in such a manner as to put another off his guard, and then, afterwards, by a sudden change in his course of conduct, declare a forfeiture, when the other party has been misled, and is helpless to avert the consequences. That such a course of dealing may be pursued by insurance companies and mutual benefit associations as will estop them from saying that there was no agreement to receive any premiums or calls after the same became due, after the companies have permitted their policies or certificates to stand open and remain uncanceled, and especially after they have accepted payments of premiums or assessments overdue. The following authorities were cited as establishing these principles: Bac. Ben. Soc. § 433; Insurance Co. v. Eggleston, 96 U. S. 572, 577; Insurance Co. v. Doster, 106 U. S. 30, 35, 1 Sup. Ct. 18; Insurance Co. v. Unsell, 144 U. S. 439, 449, 12 Sup. Ct. 671; Dennis v. Association, 120 N. Y. 496, 505, 24 N. E. 843; King v. Association, 87 Hun, 591, 597, 34 N. Y. Supp. 563; Insurance Co. v. Warner, 80 Ill. 410; Association v. Windover, 137 Ill. 417, 27 N. E. 538; Silverberg v. Insurance Co., 67 Cal. 36, 39, 7 Pac. 38; Association v. Jones, 84 Ky. 110, 117; Sweetser v. Association, 117 Ind. 97, 101, 19 N. E. 722; Girard Life Ins. Co. v. Mu-

tual Life Ins. Co., 86 Pa. St. 236. The court held that there was sufficient evidence to justify the submission of the case, upon the facts, under proper instructions from the court on the law, to the jury, and that the court below erred in instructing the jury to find a verdict for the defendant. The judgment of the circuit court was accordingly reversed, and the case remanded for a new trial. Upon the second trial the issues were the same as upon the first, and the testimony introduced upon both sides substantially the same upon both trials. It is clear that the decision of the circuit court of appeals upon the former writ of error is the law of the case, and, so far as the court has considered the questions at issue, they must be deemed to be res judicata, and not open for review at this time. The law upon this subject has been established by numerous decisions. The supreme court of the United States, in Roberts v. Cooper, 20 How. 481, affirms this rule, in the following language:

"On the last trial the circuit court was requested to give instructions to the jury contrary to the principles established by this court on the first trial, and nearly all the exceptions now urged against the charge are founded on such refusal. But we cannot be compelled, on a second writ of error in the same case, to review our own decision on the first. It has been settled by the decisions of this court that after a case has been brought here and decided, and a mandate issued to the court below, if a second writ of error is sued out it brings up for revision nothing but the proceedings subsequent to the mandate. None of the questions which were before the court on the first writ of error can be reheard or examined upon the second. To allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute on the first would lead to endless litigation. In chancery, a bill of review is sometimes allowed on petition to the court; but there would be no end to a suit, if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes in its members. See Sizer v. Many, 16 How. 98; Corning v. Nail Factory, 15 How. 466; Himely v. Rose, 5 Cranch, 313; Canter v. Insurance Co., 1 Pet. 511; The Santa Maria, 10 Wheat. 431; Martin v. Hunter's Lessee, 1 Wheat. 304; and Sibbald v. U. S., 12 Pet. 488."

To the same effect are Supervisors v. Kennicott, 94 U. S. 498; The Lady Pike, 96 U. S. 461; Stewart v. Salamon, 97 U. S. 361; Republican Min. Co. v. Tyler Min. Co., 48 U. S. App. 213, 25 C. C. A. 178, 79 Fed. 733.

It is contended, however, by counsel for the plaintiff in error, that the decision of this court on the former writ of error was not in accordance with the law as declared by the supreme court of the United States in Thompson v. Insurance Co., 104 U. S. 252, and that, as the law of that court is binding upon this court, the rule of stare decisis cannot be followed, as against the authority of that court. The answer to this proposition is that Thompson v. Insurance Co. was submitted to the court and fully considered in the former case, and, while not referred to in the decision, it was deemed to be inapplicable to the facts before the court in this case, and the cases cited by the court indicated the distinction. To the extent, therefore, that the present assignment of errors involves questions that have already been determined by this court, they cannot be considered. What questions have been so determined? The motion made by counsel at the close of the testi-

mony upon the last trial, that the court should instruct the jury to return a verdict for the defendant on the grounds specified in the motion, was the same motion, based upon substantially the same grounds, as was made at the close of the testimony upon the first trial. This motion, it has been determined by this court, should have been denied. The questions so determined and involved in the motion as made upon the second trial will not, therefore, be further considered. Counsel for the plaintiff in error also requested the court, upon the second trial, to give certain other instructions. In so far as the questions involved in these instructions have been considered in the former case, they will not be further reviewed. We will now proceed to consider the remaining assigned errors relied upon by the plaintiff in error in his brief:

In the course of the cross-examination of the plaintiff, he testified concerning the delay in paying assessment No. 16, in 1884, and said, among other things, that he was a minister, and was in possession of a church at that time in San Jose. He was then asked by counsel for defendant, "What was your salary at that time?" The court asked how that was material. Counsel explained that he proposed to show that it was owing to the financial inability of the plaintiff that he could not pay the delinquent assessments when they respectively came due. He also proposed to discredit the testimony of the witness. After some discussion with the court as to the materiality of the question, the court held that the fact called for by the question was not material. The question at issue, to which the testimony is claimed to have had relation, was as to whether there was a waiver of the rules and regulations of the association requiring the payment of the assessment within the time specified in the notice of the assessment. The contention of counsel for the plaintiff in error appears to be that, had the witness been permitted to testify as to his salary, he would have disclosed the fact that it was so small (a fact subsequently admitted by the witness in his testimony) that he was not financially able to pay the assessments as they became due. It certainly requires no argument to show that this fact did not tend to prove that there was no waiver of the rule requiring punctual payments of assessments. But counsel, in his brief, contends that plaintiff's default in making payments was because of his financial inability to pay the assessments as they became due, and not because of the statement which he testified had been made to him by the assistant secretary of the association, that punctual payments were not required of California members, and that it was for the purpose of bringing out this contradiction that the question was material and relevant. Counsel has evidently overlooked the fact that this last statement of the witness was drawn from him on cross-examination some time after he was asked the question as to his salary. It is not perceived how an immaterial fact drawn from a witness on cross-examination could, under any circumstances, become relevant and material to contradict a subsequent statement made by the same witness on cross-examination. The ruling of the court was unquestionably correct.

The defendant, in its answer, denied that the plaintiff was a creditor of the insured. The plaintiff testified upon this point that, in certain stock transactions, Smith had become indebted to him in 1876; that subsequently Smith became a bankrupt in the United States district court, and was discharged from his debts in 1878. In these proceedings plaintiff appeared as having a claim against the bankrupt for the sum of $2,814.35, and as consenting to his discharge. In the application of Smith to the Mutual Reserve Fund Life Association for membership in the association, dated February 19, 1884, he set forth, among other things, that the name of the person for whose benefit the certificate was issued was Rev. George W. Beatty, that his relationship to the applicant was that of creditor, and that the applicant owed Beatty quite a large sum of money, and this was the only method of recovery. This application was signed by Edwin L. Smith and George W. Beatty; and, upon the representations contained therein, the association issued to Smith the certificate of membership in controversy, in which it was provided that upon his death the sum of $4,000 was payable to George W. Beatty, creditor, as his interest might appear, if living at the time of said death; otherwise, to the legal representative of the member. The original debt having been discharged by the bankrupt proceedings, it became material to inquire whether the plaintiff was in fact a creditor of the insured at the time of the insurance. In addition to the evidence of that fact, as contained in the terms of the written application for the insurance, the plaintiff testified that he had several conversations with Smith, after his discharge in bankruptcy, in regard to the amount be owed him. The witness was then asked to state what Smith said in regard to paying the debt he owed the witness, if anything. Counsel for the defendant objected that the question was irrelevant, immaterial, incompetent, and inadmissible, on the ground that Smith had been discharged in bankruptcy from this debt, by and with the written consent of the plaintiff. When a debt has been discharged by proceedings in insolvency or bankruptcy, the remedy to enforce the payment of the debt is gone; but the moral obligation to pay it still remains, and is a good consideration for a new promise to make such payment, and the new promise may be oral. Lambert v. Schmalz, 118 Cal. 33, 50 Pac. 13. The objection was properly overruled.

It is also assigned as error that the widow of Edwin L. Smith, who was called as a witness in behalf of the plaintiff, was permitted to testify, over the objections of counsel, as to the circumstances under which the insurance was made payable to plaintiff as a creditor, and what her husband said about it. This objection was too general. It does not indicate the specific grounds upon which it was made, and must therefore be disregarded. But, aside from the insufficiency of the objection, the testimony was admissible for the reasons given in sustaining the ruling of the court in overruling the previous objection.

It is next assigned as error that the court instructed the jury as follows:

"If you find from the evidence that the conduct of the company in the matter of accepting payments of prior assessments or calls was such as to lead the plaintiff, as a reasonable and prudent man, to believe that strict compliance with the provisions of the policy with relation to payment of calls would not be exacted, and that a delay of a few days after the time for the payment of calls or assessments had matured would make no difference to the company, and that such delayed payments would be accepted by it, and if you further find that plaintiff acted upon such belief in not offering to pay call 43 within the time allowed by the policy, then you would be authorized to find that the defendant had waived its right to insist upon a forfeiture of the policy because of such delay in paying call No. 43; and in that case the plaintiff would be entitled to a verdict. Upon this point relating to the waiver by defendant of strict performance of the terms of its policy on the part of the plaintiff, I instruct you that you are to consider all of the evidence, and put yourself in the position of plaintiff, as disclosed by such evidence, and then, as reasonable men, draw your own conclusion as to what the plaintiff had a right to believe from the defendant's prior dealings with him in relation to the payment of delinquent assessments. The right to insist upon a forfeiture for nonpayment of money due at a particular time may be waived; and if you believe that the course of dealing between the plaintiff and defendant in regard to the payment and receipt of delinquent assessments was such as to produce in the mind of the plaintiff, as a reasonable and prudent man, an honest belief that a few days' delay would make no difference to defendant in the payment of mortuary calls, and that plaintiff acted upon such belief in delaying his offer to pay call 43, then you would be authorized to find that defendant waived a strict compliance with the conditions of the policy in regard to the time for the payment of such call. This rule or principle of law is founded upon the principle that one party to a contract ought not to be permitted to make and show a continued and repeated leniency in receiving delinquent payments, and in such a way as to put another off his guard, and then, by an instant change of conduct, declare a forfeiture, after the other party has been misled, and is helpless to avert the consequences. It is a question for you, gentlemen of the jury, as reasonable men, to consider, whether the company, by its conduct and previous course of dealing, led the plaintiff, as a reasonable and prudent business man, to believe that he could make payment a few days after the time specified in the notice for the making of mortuary calls or assessments. The court cannot say to you, as a matter of law, that one receipt of money after the time when, under the strict terms of the policy, it should have been paid, would make a waiver, or that twenty would. It is not in the number. The question is for you to determine, from the whole course of business, whether the plaintiff, as a prudent business man, had a right to believe that it was immaterial to the defendant whether he paid mortuary calls on the day named in the notices, or a few days thereafter, either directly to the home office, or to the local treasurer of the defendant in this state. It is also claimed by plaintiff that even if you should find that the forty-third call was not paid in time, and that the prior conduct of the company did not excuse a delay, that defendant had nevertheless waived a forfeiture on account of the nonpayment of such a call within the specified time in another way, namely, by making a subsequent mortuary call and assessment, and sending notice thereof to plaintiff. As to that, I instruct you as follows: Imposing an assessment or mortuary call upon the certificate or policy issued to a policy holder, and sending notices of such assessment to a policy holder after the insurance company has knowledge of the fact of previous nonpayment within the time fixed by the policy, and which delay in payment would entitle it to consider the policy no longer binding, without its assent, is a waiver of the right to claim a forfeiture for nonpayment of previous calls within the time fixed by the policy, and which forfeiture it otherwise might have the right to insist upon. If, therefore, you find from the evidence that subsequent to call 43 an assessment was imposed upon plaintiff on account of the policy sued on in this action, and notice of such assessment sent to plaintiff, that would be treating the policy as in full force by the company at that date; and you will find that there was no forfeiture of the policy on account of nonpayment of mortuary call 43, and the plaintiff would

be entitled to recover, if thereafter, and within the time allowed by the policy, he offered to pay to the defendant, or its authorized agent, the amount of such subsequent assessment or call. And in this connection I charge you that the fact that all the notices calling for the payment of assessments contain the following condition, to wit, 'The sending of this notice shall not be held to waive any forfeiture or expiration of membership caused by nonpayment of any previous annual dues or mortuary calls,' will not alter the l·gal effect of the notice; and the court instructs you that the legal effect of such notice cannot be overcome by inserting therein a provision like that referred to."

These instructions were all clearly within the law as declared by this court on the former appeal. There was evidence tending to establish the fact of a waiver of the right of the association to insist upon a forfeiture of the contract of insurance because of the delay in paying mortuary call No. 43. The claim of waiver was based upon the testimony that prior delays had been waived by the association, and the contract continued in force by the collection of assessments thereon. It appeared that mortuary calls numbered 16, 17, 20, 25, 26, and 42 were not paid within the 30 days provided in the notices of assessments; that for calls numbered 16, 17, and 25 conditional receipts were issued, and the conditions complied with by the insured, but for calls numbered 20 and 26 regular receipts were issued by the home office, in New York, and for call No. 42 a regular receipt was issued by the local agent at San Jose. The claim of waiver was also based upon the testimony of the defendant in error that the assistant secretary of the association, in New York, had informed him that they were not particular as to the exact date of payment made by parties residing at distant points. This testimony was contradicted by the officers of the association, but it was for the jury to determine which of these statements was true. The claim of waiver was also based upon the testimony of the defendant in error that subsequent to the making of call No. 43 an assessment was imposed by the association upon the insured, designated as mortuary call No. 44, and that notice of this assessment was sent to the defendant in error. This testimony was also contradicted by the officers of the association, but it was for the jury, in the light of all the circumstances, to determine which of these statements was true. Upon the evidence as introduced at the trial, it was the duty of the court to submit the question of waiver and forfeiture to the jury for its determination, in accordance with the principles declared by this court in its opinion in the case; and this the lower court did, in clear, concise language, and with such proper and necessary explanation and qualification that the precise issue was fully and accurately defined. We find no error in these instructions.

It is assigned as error that the court refused to give certain instructions requested by the plaintiff in error. It will be unnecessary to discuss these instructions. So far as they relate to the substantial rights of the parties, they are disposed of by what has been said concerning the instructions which were given by the court. Judgment affirmed.