Argued at Pendleton May 3, reversed June 8, 1926.

# UNITED STATES NATIONAL BANK OF LA GRANDE v. E. E. MILLER.

(246 Pac. 726.)

**Bankruptcy.**

1. Promise of debtor after discharge in bankruptcy to pay debt may be enforced.

**Bankruptcy.**

2. To be enforceable, promise to pay debt, made after discharge in bankruptcy, must be clear, distinct and unequivocal recognition and renewal of debt as binding obligation.

**Bankruptcy.**

3. Promise renewing debt after discharge in bankruptcy need not be in writing, in absence of statutory requirement.

**Bankruptcy—Conditional Promise to Pay, Made After Bankruptcy, may be Enforced on Express Showing That Condition has Been Performed.**

4. Conditional promise to pay debt, made after discharge in bankruptcy, may be enforced, if it is clearly, unequivocally and expressly shown that condition precedent has been performed or contingency has occurred.

**Bankruptcy.**

5. Promise to pay debt, made after discharge in bankruptcy need not necessarily fix definite time for payment to be enforceable.

**Bankruptcy.**

6. Creditor's testimony that bankrupt made promise to pay debt will ordinarily remove doubt thereof if bankrupt, testifying in his own behalf, fails to deny it.

**Bankruptcy.**

7. Creditor's testimony that bankrupt promised to pay debt absolutely, and denial by bankrupt, raises question for jury.

**Bankruptcy.**

8. Unaccepted offer, made by bankrupt to pay discharged debt on certain conditions, is not sufficient to enforce payment.

**Bankruptcy.**

9. Mere proposition by bankrupt to give new note for discharged indebtedness does not revive debt.

---

1. Moral obligation sufficient to support new promise after discharge in bankruptcy, see note in 53 L. R. A. 362. See, also, 3 R. C. L. 324.

2. See 3 R. C. L. 326.

**Bankruptcy.**

10. Payments of interest or on principal do not *ipso facto* revive debt discharged in bankruptcy.

**Bankruptcy.**

11. Discharged bankrupt, having made conditional promise to pay barred debt, may waive condition and make unconditional express promise to pay.

**Bankruptcy—Written Agreement, Under Which Bankrupt Claimed to have Given Plaintiff Note not yet Due in Discharge of Old Debt, Held Erroneously Excluded from Evidence.**

12. In action against bankrupt on claim alleged to have been renewed, where answer was that defendant, under agreement with creditors, gave plaintiff note for old debt payable in five years and not yet due, exclusion of written agreement, pursuant to which note was claimed to have been given, *held* erroneous.

**Bankruptcy—In Suit on Old Debt Claimed Renewed, Answer of Bankrupt That Old Debt was Canceled and Merged in New Note not yet Due Held not in Material Variation With Agreement Offered in Evidence Showing Promise to Renew Old Debt With New Notes.**

13. In suit on old debt claimed renewed, answer of bankrupt that old debt was canceled and merged in new note not yet due *held* not in material variation with agreement offered in evidence showing promise to renew old debt with new notes; allegations as to cancellation and merger being merely matter of phraseology, and not misleading.

**Bankruptcy—In Action on Indebtedness of Bankrupt Claimed to have Been Renewed by Promise to Pay; Answer Alleging That Old Indebtedness had Been Merged in New Note not yet Due Held not Merely Plea in Abatement.**

14. In action on indebtedness of bankrupt claimed to have been renewed by promise to pay, answer alleging that old indebtedness had been merged in new note not yet due *held* not merely plea in abatement, but in effect alleged that promise to pay was conditional upon extension of time.

**Bankruptcy—Agreement of Bankrupt to Execute and Deliver Notes Held Supported by Consideration in Promise of Creditor to Realize All Possible on Mortgaged Property, and Accept Note for Balance.**

15. Agreement of bankrupt to execute and deliver notes to cover old indebtedness *held* supported by sufficient consideration in promise of creditor to realize all possible on mortgaged property, and to accept note of bankrupt for balance of his indebtedness.

**Bankruptcy.**

16. Bankrupt's note for discharged debt, with amount thereof left blank, to be filled in by creditor after deducting amount realized from mortgaged property, *held* not invalid.

---

10. Effect of partial payment to revive debt after a discharge in bankruptcy, see note in 26 L. R. A. (N. S.) 274.

**Bills and Notes.**
17. Note executed and delivered, but with amount left blank, to be filled out by *bona fide* holder, may be enforced when properly filled out within reasonable time.

Bankruptcy, 7 **C. J.**, p. 395, n. 77, p. 412, n. 26, 27, 29, p. 413, n. 30, 31, 34, 36, 37 New, 38, 39, 40, p. 416, n. 74 New, p. 417, n. 89 New, 90.
Bills and Notes, 8 **C. C. J.**, p. 185, n. 46.
Contracts, 13 **C. J.**, p. 32, n. 81.

From Union: C. H. McColloch, Judge.

In Banc.

This is an action upon certain promissory notes. The cause was tried before the court and a jury, and a verdict rendered for $13,341.44, and a judgment entered thereon in favor of plaintiff, from which defendant appeals.

The complaint, which is in the usual form, contains three causes of action founded upon three promissory notes upon which judgment is demanded in the sum of $16,923.57.

The defendant denies plaintiff's cause of action, except as in his answer alleged. After admitting the organization of the bank association, the defendant as a separate and further answer and defense to plaintiff's first cause of action alleged:

"That on or about the 3rd day of December, 1920, the defendant E. E. Miller (Ernest E. Miller) was duly adjudged to be bankrupt by the District Court of the United States for the District of Oregon, and thereby turned over to said court all his assets save such as were exempt under the National Bankrupt laws, to be divided among his creditors according to law; that at said time the defendant was owing the note and debt evidenced thereby named in said amended complaint to the plaintiff, which was duly scheduled among the other debts of said bankrupt,

and the said bankrupt was thereafter duly discharged by said court.

"That after the said adjudication in bankruptcy the defendant on or about the 12th day of February, 1921, entered into a contract agreement in writing with the plaintiff and the principal creditors of the defendant in the way of a compromise in bankruptcy, and in the said contract and compromise agreement it was agreed and understood and stipulated between the plaintiff and the said principal creditors and this defendant, and mutually covenanted, that if the defendant would renew and revive his debts that were barred by the said bankruptcy, the plaintiff and the other said creditors would accept in full settlement of their respective claims so barred in bankruptcy, notes of date February 1st, 1921, due five years after date, or February 1st, 1926, with interest at six per centum per annum payable at maturity, and that inasmuch as plaintiff's claim was secured by chattel and crop mortgages, it was further agreed that plaintiff should realize what it could from such mortgages and mortgaged property, and that for the remainder due, it should take such five year note of said date and maturity, and that all of the pre-bankrupt claims should be canceled and merged into the said five year notes so postponing the maturity; and in said contract it was further agreed that one of the creditors should finance the defendant to make and save his crop of a large number of acres of grain for the then current year, and whichever creditor should finance defendant should have first mortgage lien on the current crop for the money advanced for such crop for said year.

"That under and pursuant to said written agreement and contract with plaintiff and other prebankruptcy creditors, and the extension of the time for the payment of their debts and the interest to the first day of February, 1926, the defendant waived and abandoned his rights in bankruptcy to have all of his said debts canceled thereby, and executed to his said creditors and plaintiff such new notes as agreed for the respective amounts due at the time

of said bankruptcy proceeding, as determined by said creditors.

"That the said note and debt named in plaintiff's first cause of action is the one barred in bankruptcy, and canceled under said agreement, and that the defendant owes plaintiff nothing on said note either principal, interest or attorney fee."

In the plaintiff's second and third causes of action the defendant denies there is anything due from him to the plaintiff on the notes or debts evidenced thereby, or that defendant received any consideration for said notes.

For a further and separate answer and defense, and by way of counterclaim to the plaintiff's first and second cause of action, defendant alleges in substance, that at the time he agreed to renew his obligations barred in bankruptcy he had a large area sown to grain, and plaintiff bank agreed to finance him, to care for, harvest, sell and thresh his crop, which it did and defendant executed mortgages on his crop, to secure the same. That during the year 1921 and 1922 the transaction between plaintiff and the defendant, the plaintiff placed to defendant's credit in the bank the following sums:

"By notes given by defendant at different times to plaintiff and the proceeds of two years' crops of grain received by plaintiff from sales thereof.........$10,081.38
"By the interest computed on the several promissory notes of defendant accruing to plaintiff, on the notes amounting to $5,264.55, redeemed by defendant.....      70.06

"Total credits advanced defendant....$10,151.44
"That during the said years of 1921 and 1922 the defendant redeemed the different notes he had given

said bank, and turned over to it the proceeds from the sale of grain for the said years as follows:

"To the various notes given by defendant to plaintiff during the years 1921 and 1922, redeemed and canceled..........$ 5,264.55
To wheat crop of 1921, turned to plaintiff..   3,463.79
To wheat crop of 1922, turned to plaintiff..   2,106.16

"Total debit paid in by defendant to plaintiff...................$10,834.50

"That by reason of the foregoing there was due this defendant from the plaintiff on December 20, 1922, the sum of $764.08, and no part thereof has been paid, and there is now due and owing the said principal and interest thereon at 6 per centum per annum from said date or the sum of $764.08 on this the 29th day of April, 1925."

The plaintiff denied the allegations of the answer with the exceptions of the bankruptcy and discharge of the defendant, except as pleaded by plaintiff, and for a further reply averred, in effect:

"That subsequent to the date when defendant was adjudged a bankrupt, said defendant, in consideration of his moral obligation to pay said note, promised and agreed to pay the note set out in plaintiff's first cause of action according to its terms and tenor, notwithstanding the bankruptcy proceedings. That said promise and agreement revived the original note, and said note thereupon became a valid and subsisting obligation of defendant, and in no way affected by said discharge in bankruptcy, and said defendant thereby waived the effect of said discharge in bankruptcy upon said note, and promised and agreed with this plaintiff that he would withdraw said bankruptcy proceedings and not permit any discharge to affect the obligation of said note."

For a reply to the separate answer and counter-claim to plaintiff's first and second causes of action, plaintiff denies the same except as pleaded by it.

For a further reply thereto plaintiff avers that defendant made, executed and delivered to this plaintiff, during the years of 1921 and 1922, notes aggregating the sum of $18,587.14, in addition to the note set forth in plaintiff's first cause of action, which notes were paid, except the notes set forth in plaintiff's complaint, and for one note of $324 dated September 1, 1921, payable on or before five years with interest at 6 per cent. And that no other money was received by plaintiff, except for the payment of said notes and the payments indorsed upon the notes set forth in plaintiff's complaint.

For a second and further reply thereto, plaintiff avers that on the fifth day of October, 1922, at the time said defendant made, executed and delivered the promissory note set forth in plaintiff's second cause of action, plaintiff and defendant had full settlement of all notes given during the years 1921 and 1922, and prior thereto, and defendant confirmed all credits theretofore made upon the promissory note set forth in plaintiff's first cause of action and it was found that there was due from defendant to plaintiff, upon all of the transactions and promissory notes, during the years 1921 and 1922 and prior to October 5, 1922, the sum of $859, and the said note for $324 due at that time, and the note set forth in plaintiff's first cause of action; and said defendant thereupon made, executed and delivered to plaintiff the promissory note set forth in plaintiff's second cause of action as a stating and settlement of said matters.

The note of $12,645 set forth in the first cause of action bears the following indorsement of payment, principal and interest:

"Jan. 17, 1921, $ 646.08  March   2, 1921, $699.29
Mar. 2, 1921, 2100.71  March 11, 1921,   19.80
Mar. 11, 1921, 1200.00  April   29, 1921,   96.65
Apr. 29, 1921,  208.05  Nov.    28, 1921, 396.20
Mar. 27, 1923,  400.00  October 5, 1922, 579.20
Jan. 15, 1924,   98.62  June   28, 1924, 201.00

REVERSED.

For appellant there was a brief and oral argument by *Mr. J. S. Hodgin.*

For respondent there was a brief over the name of *Messrs. Cochran & Eberhard* with oral arguments by *Mr. Geo. T. Cochran* and *Mr. Colon R. Eberhard.*

BEAN, J.—Upon the trial the plaintiff introduced the promissory notes described in the complaint, showing the amount of the balance due thereon and rested his case.

The defendant in support of his answer undertook to show that after he was adjudged a bankrupt on December 3, 1920, he entered into an agreement in writing with his principal creditors in order that he might continue raising wheat, and that it was agreed between himself and his creditors that he should give each of his unsecured creditors a new note in lieu of the old notes and indebtedness, which were barred by the adjudication in bankruptcy, such new notes to be dated February 1, 1921, with interest at 6 per cent per annum, payable on or before five years from the date thereof; that new notes were executed in favor of all of his principal crditors. The written agreement was dated February 12, 1921, and was signed by defendant E. E. Miller and several creditors, including the "U. S. National Bank, La Grande,

T. J. Scroggin, Cash." Defendant offered in evidence the written agreement to which counsel for plaintiff objected as incompetent, irrelevant and immaterial and for the reason that defendant had not performed or tendered performance of the written agreement, and for the further reason the answer did not state a defense and that the contract was unilaterial and without consideration. The objection was sustained by the court and defendant reserved an exception.

The agreement offered in evidence provides as follows:

"Whereas, Ernest E. Miller, a resident of Union County, Oregon, was on or about the 3rd day of December, 1920, adjudged a bankrupt by the United States District Court for the District of Oregon, which bankruptcy proceeding is still pending, and whereas said Ernest E. Miller desires at this time to give to each of his unsecured creditors a new note in evidence thereof on the terms and conditions hereinafter set forth, now therefore in consideration of such existing indebtedness and of mutual covenants herein contained the said Ernest E. Miller hereby promises and agrees to execute and deliver to each of his unsecured creditors his promissory note bearing date of February 1st, 1921, such note to bear interest at the rate of six per cent per annum from date until paid, said note to be payable on or before five years from date.

"And whereas the United States National Bank of La Grande, Oregon, now holds certain security upon the debt due it from said Ernest E. Miller, but which security is insufficient to cover the entire amount of such debt, said United States National Bank hereby agrees that it will realize all possible out of its said security, and for the balance of its said debt it will accept the note of said Ernest E. Miller, such note to be dated February 1st, 1921, and to bear in-

terest at six per cent per annum, and to become due on or before five years from date, the same as the notes given all other unsecured creditors.''

The agreement further recites that it would be necessary for Miller to secure advances to take care of his crops for the season of 1921, and it was agreed whoever should make such advances should have a prior lien on the crops for the amount; and that whereas Miller had about 195 acres of summer-fallow which was seeded to grain and ready for seeding, it was agreed that the trustee might release all claim to the growing grain and summer-fallow and surrender possession thereof ·to Miller.

It appears from the evidence that after the arrangement was made between defendant and several of his creditors and after the alleged agreement between plaintiff and defendant, in regard to renewing the note described in the first cause of action, which was barred in bankruptcy, the defendant proceeded to carry on his farming and the plaintiff bank financed him for that purpose during the years 1921 and 1922. At harvest time of each of those years the proceeds of the crops were turned over to the plaintiff, several notes were given by defendant to plaintiff during the time and many of the notes were renewed at different dates and new transactions were had between the plaintiff and defendant during the two years amounting to over the sum of $18,000.

Defendant assigns error of the trial court in excluding the written agreement from the evidence. After the written agreement was tendered in evidence the defendant testified to the purport that, as the amount that the plaintiff would realize on its

118 Or.—19

security by the sale of the chattels mortgaged to plaintiff to secure the note upon which the first cause of action is based was not then ascertained, he executed and delivered to plaintiff a promissory note with the amount thereof left blank for the plaintiff to fill in, to be dated February 1, 1921, payable five years after that date with interest at 6 per cent per annum; and that he never renewed the note which was barred in bankruptcy in any other manner or upon any other condition; that it was agreed between plaintiff and defendant that plaintiff should accept a note due on February 1, 1926, with interest at 6 per cent per annum in lieu of the note barred in bankruptcy upon which the first cause of action is based.

On the other hand, the plaintiff's witness, Mr. T. J. Scroggin, cashier of the plaintiff bank, testified, in substance, in regard to the agreement that the defendant promised to pay plaintiff the old note which was barred in bankruptcy, if the plaintiff would finance him so that he could proceed with his farming and the raising of crops, and that it was only the two smaller notes, amounting to about $324, that the plaintiff agreed to extend the time of payment for five years from February 1, 1921. And that the defendant Miller several times mentioned the matter and promised to make such payment of the old note.

Defendant offered the written contract in evidence several times and after the testimony of Mr. Scroggin, the cashier, had been introduced, he tendered the written agreement in evidence for the purpose of contradicting the witness Scroggin; for the purpose of showing that defendant had promised to

give a five year note; and also for the reason it was "the best evidence of the relations and agreement between the parties."

The written agreement was rejected by the court and an exception to the ruling saved by the defendant. Mr. Scroggin, the cashier of the plaintiff bank, testified that they never took a note signed in blank "in their lives"; that at the time of the creditors' meeting and arrangement the bank held two small notes of plaintiff, one for $200 and one for $100, and that he accepted the note of defendant for the amount of those notes and interest, $324, due February 1, 1926; that at the creditors' meeting the bank's large note, which was secured, was talked about and it was thought as values were up there might be enough of the mortgaged property to secure it, and that this large note was not included in the arrangement. Afterwards the first mortgage on the real estate was foreclosed and nothing was realized on the bank's second real estate mortgage.

On November 28, 1921, $396.20 of the proceeds of the wheat crop raised by defendant was credited as interest on the old note with Miller's knowledge and acquiescence; and that on October 5, 1922, $579.20, which was included as a part of one of the new notes executed by defendant to plaintiff, was credited on the old bankruptcy note as interest.

1. The law is well settled that a discharge in bankruptcy while releasing the bankrupt from liability to pay a debt that is provable in the bankruptcy proceedings leaves him under a moral obligation sufficient to support a new promise by the debtor to pay the debt, which may be enforced against him.

2–9. In order to constitute a promise there must be a clear, distinct and unequivocal recognition and renewal of the debt as a binding obligation, but it is not essential that the new promise should be in writing in the absence of a statutory requirement to that effect: *Mutual Res. Life Assn.* v. *Beatty*, 93 Fed. 747, 756 (35 C. C. A. 573); *Smith* v. *Stanchfield*, 84 Minn. 343 (87 N. W. 917); *Robinson* v. *Jacobia*, 115 Kan. 36 (221 Pac. 1113); *Merchants Protective Assn.* v. *Popper*, 59 Utah, 470 (204 Pac. 107). It must be an express promise. But that necessary attribute does not exclude the right to rely upon a conditional promise, provided it is equally clearly, unequivocally and expressly shown that such condition precedent has been performed; or where the condition is the happening of an event, that such contingency has occurred: Note, 135 Am. St. Rep. 380. It is not necessary that the promise should fix a definite time for payment. Where the promise is conditional a compliance with the conditions must be shown in order to support a recovery thereon. The creditor's testimony that the bankrupt made the promise ordinarily will remove any doubt of the fact, if the bankrupt, although testifying in his own behalf, does not deny that he made the promise. On the other hand, his absolute denial would raise a question for the jury: 7 C. J. 412, § 732; 3 R. C. L. 324, § 147; *Needham* v. *Matthewson*, 81 Kan. 340 (105 Pac. 436, 135 Am. St. Rep. 374, and note, 19 Ann. Cas. 146, 26 L. R. A. (N. S.) 274). An unaccepted offer to pay on certain conditions is not sufficient: 7 C. J. 413. A proposition to give a new note for the indebtedness does not revive the barred debt: 7 C. J. 412, note 29 (f),

citing *Stern* v. *Smith,* 127 Ill. App. 640; affirmed, 225 Ill. 430 (80 N. E. 307, 116 Am. St. Rep. 151).

10. Partial payments of principal or payments of interest do not *ipso facto* revive the debt: *Allen & Co.* v. *Ferguson,* 18 Wall. (U. S.) 3 (21 L. Ed. 854); *Needham* v. *Matthewson,* 135 Am. St. Rep. 376, and note, 377–391.

11. Where a discharged bankrupt makes a conditional promise to pay a debt barred in bankruptcy he may waive the condition and make an unconditional express promise to pay the debt owing to his creditor: *Needham* v. *Matthieson,* 135 Am. St. Rep. 381; *Tompkins* v. *Hazen,* 165 N. Y. 18 (58 N. E. 762).

It has been held that evidence that the maker of a note after his discharge in bankruptcy said repeatedly to the payee, "I will pay it," was sufficient to warrant the court in submitting to the jury the question whether or not there was an express promise to pay the note: 7 C. J. 417, note 90 (a); *Farmers' Bank* v. *Richards,* 119 Mo. App. 18 (95 S. W. 290).

12. The claim of defendant that the only manner in which he renewed the old note, described in plaintiff's first cause of action, was by giving plaintiff a new note due five years from the date thereof, or on February 1, 1926, pursuant to the written agreement would be partially supported by the written contract offered in evidence and rejected. The writing tends to explain the compromise between defendant and his creditors, among whom plaintiff was one, and recites that plaintiff agreed to accept a certain kind of a note for the balance of the note of plaintiff, which was secured by a chattel mortgage, after applying the proceeds of the mortgaged property. The defendant was entitled to have the contract, as far

as it goes, considered by the jury. Defendant alleges, in his answer, that pursuant to the written agreement,

"and the extension of the time for the payment of their debts and the interest to the first day of February, 1926, the defendant waived and abandoned his rights in bankruptcy to have all of his said debts canceled thereby, and executed to his said creditors and plaintiff such new notes."

13. The defendant avers that upon giving such new note "all of the prebankruptcy claim should be canceled and merged into the said five year note so postponing the maturity." Plaintiff contends that there is a material variance between the contract, tendered in evidence, and the allegations of the answer in that the answer avers that the old debts were to be canceled. The language of the answer, after averring that plaintiff for the remainder due should take such five year note, states that "the pre-bankruptcy claim should be canceled and merged into said five year notes," etc. It is merely a matter of phraseology in averring that the old note was to be renewed by a new one given in lieu thereof. The plaintiff could not have been misled. Defendant testified that he executed such new note with the amount thereof left blank to be filled in by plaintiff. The following reference in plaintiff's brief explains the rule.

In the case of *Nelson* v. *Dowgiallo*, 73 Or. 342, 346 (143 Pac. 924, 1199), Mr. Justice McNARY said:

"If the variance between the pleading and the evidence offered is such as is calculated upon its very face to mislead the party, such as the court must have understood as meaining something else than that which is offered in proof, the evidence ought to be rejected; but if the materiality of the

variance is not obvious and apparent, the evidence should not be excluded, unless the party objecting thereto will satisfy the court that he has been misled thereby.''

We notice there is some respectable authority for the proposition that a debt barred in bankruptcy is not revived by a new promise to pay the same as suggested by the answer; and that an action to enforce payment thereof must be based upon the new promise. As we have noted in regard to defendant's answer, this is only a matter of form. See note J, 135 Am. St. Rep. 387. It is stated in 7 C. J. 413, Section 732, as follows:

''An action to recover the debt may be based either on the original debt or on the new promise. The pleadings in such an action are subject to the usual rules of construction.''

The written contract was offered in evidence, among other things, as a defense to plaintiff's second and third causes of action, which are based upon the new post bankruptcy notes executed during the two years plaintiff was financing defendant in his farming operations. All of the several notes and renewals thereof given plaintiff by defendant during 1921 and 1922 were fully explained by the cashier of the bank during the trial and counsel for defendant stated at the time that defendant accepted the statement of the bank in regard thereto. So, further comment in regard to such new notes is unnecessary.

14. Concerning the note set forth in the first cause of action, the written contract should have been admitted in evidence for what it shows, although it does not prove that a new note was executed by defendant in lieu of the prebankruptcy note. Coun-

sel for plaintiff urge, in support of their objection to the written contract in connection with the an swer, that defendant attempts to plead an abatement, and that the facts stated are insufficient therefor. It is stated in their brief thus:

"The plea that an action upon a promissory note was brought prematurely is a plea in abatement and must be pleaded as such or it is waived."

Citing *Elder* v. *Rourke,* 27 Or. 363, 366 (41 Pac. 6); *Fiore* v. *Ladd,* 29 Or. 528, 531 (416 Pac. 144); *McClung* v. *McPherson,* 47 Or. 73 (81 Pac. 567, 82 Pac. 13); *Barnham* v. *Lockhart,* 75 Or. 528, 542 (146 Pac. 975); 1 C. J. 107, § 169.

In considering this phase of the case, it must be remembered that the first cause of action is not brought prematurely upon a new promissory note. It is based upon the old note. The answer of defendant is more than a plea in abatement. The defendant in effect pleads that he agreed to and did renew the old barred note upon the condition that the time of payment or maturity thereof should be postponed five years from the date thereof, or until February 1, 1926. If this be true, then the defendant made a conditional new promise to pay the old note barred in bankruptcy, and in order for plaintiff to recover, it should be shown that such condition has been observed, or that the defendant has waived the same and made a binding unconditional express promise to pay the amount of the old note. The matter should have been submitted to the jury. There seems to be but little conflict between plaintiff and defendant as to the fact of the defendant making the new promise to pay, or "reviving" the old barred

debt. So, the condition as to the time of payment becomes important.

15. Counsel for plaintiff questions the consideration shown in the contract described in the record as Exhibit ''A.'' The contract recites that it ''in consideration of such existing indebtedness and of the mutual covenants herein contained,'' there was a promise upon the part of Miller to execute and deliver the notes, and an agreement upon the part of the bank to realize all possible upon the mortgaged property, and to accept the note of Miller for the balance of its indebtedness. The consideration expressed appears to be sufficient. One promise or covenant is a consideration for the other promise. The covenants contained in the contract are mutual.

16, 17. Counsel for plaintiff urge in their able brief that the defendant's testimony, that he gave a note to plaintiff with the amount thereof left in blank to be filled in by the plaintiff, was not a legal performance of the contract tendered in evidence. Citing *Chestnut* v. *Chestnut,* 104 Va. 539 (52 S. E. 348, 17 Ann. Cas. 802, 2 L. R. A. (N. S.) 879), and *Thompson* v. *Rathbun,* 18 Or. 202 (22 Pac. 837), a case where the holder did not insert his name in the note. In the latter case the complaint alleged that the note was executed and delivered to the Portland Savings Bank. It was held that recovery could not be had on such an incomplete note until some *bona fide* holder would make it complete by the insertion of his own name as payee. The opinion in that case is authority for the statement that a promissory note may be issued with a blank for the payee's name, which may be filled in by any *bona fide* holder with his own name as payee, and then it will be treated

as a good promissory note, provided such authority is exercised within a reasonable time. Citing Story on Prom. Notes, § 10; *Seay* v. *Bank,* 3 Sneed (Tenn.), 558 (67 Am. Dec. 579); 1 Daniel's Neg. Inst., § 145; *Greenhow* v. *Boyle,* 7 Blackf. (Ind.) 57; 1 Parsons' Bills and Notes, 33; 1 Rand. Com. Papers, § 183; *McIntosh* v. *Lytle,* 26 Minn. 336 (3 N. W. 983, 37 Am. Rep. 410), and other authorities.

In the Chestnut case, the amount was left blank in the body of the note with the figures "1800.00" and words on the margin thereof. In the opinion in that case, in commenting upon a blank note, we find the following:

"The blank in such an instrument is presumably intended to be filled with something, and, until that something has been added the instrument is not complete. It is not invalid simply because it is incomplete. It creates certain rights and obligations, and when properly filled up by a *bona fide* holder, may be enforced at law, or, if left blank by mistake, in equity. See *Gerrard* v. *Lewis,* L. R. 10 Q. B. Div. 30, and *Norwich Bank* v. *Hyde,* 13 Conn. 281, *supra; Frank* v. *Lilienfield,* 33 Gratt. (Va.) 377, 383–387; *Orrick* v. *Colston,* 7 Gratt. (Va.) 189."

In the present case the blank note is brought in in an entirely different manner than in any of the cases mentioned. In this case the gist of the plea is that the defendant renewed the barred obligation upon the condition that it should mature in five years after the date of the note which he gave the plaintiff in lieu of the old note barred in bankruptcy. According to his version of the matter, the plaintiff had the note with authority to fill in the amount which could be definitely fixed by deducting from the amount of the old note the proceeds of the sale of

the mortgaged chattels. The time for payment, which, according to the defendant's assertion is the material question, as we understand the testimony, was not left blank in the note. The note was not invalid. The bank usually prepared the notes for the defendant to sign. It creates certain rights and obligations, which, if the plaintiff has such note as defendant says, it then holds such obligation against the defendant, and "when properly filled out by a *bona fide* holder," may be enforced at law. The defendant has not attempted to recover upon the note which he says was signed with the amount left blank, but pleaded a condition to the new promise.

Referring again to defendant's answer, it is noticed that the defendant alleges that, after the adjudication in bankruptcy, defendant and his creditors, among whom was plaintiff, entered into a contract in writing in the way of a compromise in bankruptcy, and mutually covenanted that if the defendant would renew and revive his debts, which were barred by bankruptcy, the plaintiff would accept in full settlement of its claim a note due five years after date with interest at 6 per cent per annum. Under these allegations and the circumstances of this case, we think the testimony, in regard to the execution of the note with the amount blank, should be considered together with the written contract. The defendant cannot show whether or not the note has been filled out. According to his version, that matter is within the knowledge of the plaintiff.

Errors are assigned relating to the instructions to the jury, which appear to have been in line with the rulings in relation to the evidence. We have mentioned the question of the burden of proof in the

case. It is not deemed necessary to consider further the other assignments of error. The testimony in relation to the new promise to pay the old barred note upon the part of plaintiff being that of the cashier, and on the part of defendant, being his own testimony, and there being a conflict as to what such new promise was, the defendant, in order to have his version of the case submitted to the jury, should be accorded a new trial.

The judgment of the Circuit Court is reversed and the cause will be remanded for a new trial.

REVERSED AND REMANDED.

BURNETT, J., concurs in the result.